[Civ. No. 2400. Third Appellate District.—February 11, 1922.]

## D. W. CARMICHAEL, Petitioner, v. RAY L. RILEY, as State Controller, etc., Respondent.

[1] RECLAMATION DISTRICT — CONTRACT BETWEEN LAND OWNER AND GENERAL MANAGER OF BOARD—ASSUMPTION OF POSSESSION BY DISTRICT — VALIDITY OF AGREEMENT. — The state reclamation board having authorized its general manager to make a definite offer to a given land owner for a right of way for a levee through his land, including the removal of certain buildings thereon by the district at its cost, the general manager having made the offer and it having been accepted by the land owner, and the district having immediately taken possession and commenced the construction of its works and the removal of the buildings, there was a valid contract, binding on both the district and the land owner, notwithstanding such contract was not reported to or ratified by the board prior to the time one of the buildings was destroyed by fire through the alleged negligence of the district.

[2] ID. — ASSUMPTION OF POSSESSION — ACCEPTANCE OF BENEFITS — LIABILITY.—Conceding that such agreement was unauthorized, the district having taken possession of the land and constructed its works thereon, it must be held to have ratified the agreement. It could not knowingly accept and retain the benefits of the agreement made in its behalf, though unauthorized, and repudiate its liability thereunder.

[3] ID. — ALLOWANCE OF CLAIM — RATIFICATION OF AGREEMENT. — The allowance by the reclamation board of the land owner's claim for the value of the barn destroyed through the alleged negligence of the district constituted a ratification of the agreement made by the board's general manager to compensate the land owner therefor and was equivalent to a previous authority to make such agreement.

[4] ID.—NEGLIGENCE OF DISTRICT — COMPENSATION DUE—ALLOWANCE
OF CLAIM.—The reclamation district being bound by the terms of
such agreement, the allowance by the reclamation board of the
land owner's claim for the value of the barn was conclusive upon
the question of the district's negligence in causing the destruction
of the barn as well as of the compensation due the land owner
therefor.

APPLICATION for a Writ of Mandamus to compel the
State Controller to draw his warrant in payment of a claim
allowed by the State Reclamation Board. Writ granted.

The facts are stated in the opinion of the court.

Dunn & Brand and Chauncey H. Dunn, Jr., for Petitioner.

U. S. Webb, Attorney-General, R. T. McKisick, Deputy
Attorney-General, Ralph Smith and Louis B. Diavila for
Respondent.

FINCH, P. J.—This is an original application for a writ
of *mandamus* directing respondent to draw his warrant for
the sum of five thousand dollars in payment of petitioner's
claim against the Sacramento and San Joaquin Drainage Dis-
trict, allowed by the state reclamation board and approved
by the state board of control.

October 23, 1919, the reclamation board adopted "Plans
and Estimates of Cost for Feather River Project and Assess-
ment Number Seven." These plans provided for the acquisi-
tion of rights of way and the construction of a levee through
petitioner's and other lands and for the removal from the
rights of way of buildings thereon, including two large barns
on the right of way through petitioner's land, and estimated
the cost of removing the barns at four thousand dollars.

The rules adopted by the reclamation board January 29,
1918, among other things, provide: "The executive depart-
ment shall be under the immediate direction of the general
manager who shall report directly to the board. He shall
have charge of all the administrative and operative work
of the reclamation board and the Sacramento and San
Joaquin Drainage District. . . . He shall be the representa-
tive of the board in all matters which do not require action
by the board itself."

In the conduct of the affairs of the district, it was the practice for the general manager to negotiate with the land owners for rights of way and report to the board for approval the prices per acre agreed upon. After such approval, the general manager proceeded with the removal of any buildings on the right of way in accordance with the general plan adopted by the board as stated. The cost of removal was thereafter presented as a claim and allowed by the board. The allowance of such claim was the only action taken by the board in any case relative to the removal of buildings, after the original adoption of plans and estimates as aforesaid, except where the owner desired money compensation for his buildings instead of their removal. In the latter case the general manager reported to the board for approval, in the first instance, not only the agreed price of the land desired but, also, the compensation agreed upon for buildings on the right of way.

About the 1st of June, 1921, the dredgers used in constructing levees had reached a point near the petitioner's land and the board authorized the general manager to offer petitioner a stated price per acre for a right of way and to remove the two barns in accordance with the plans and estimates adopted. About June 3, 1921, the general manager made the offer to petitioner and the latter accepted it in accordance with the terms stated. Petitioner was ill at the time and on account of such illness he did not make a written conveyance of such right of way until about the first of the following August. The district, however, went into immediate possession of the right of way, cleared the land, constructed levees thereon, removed one of the barns and had commenced to tear down the other for the purpose of removing it when, through the alleged negligence of the drainage district, the latter barn was destroyed by fire about July 1, 1921.

July 30, 1921, the general manager reported to the board the price agreed to be paid for the right of way through petitioner's land and the board thereupon, by order entered upon its minutes, ratified the agreement made by the general manager with petitioner as to the price to be paid for the land and authorized warrants to be drawn therefor.

The minutes of September 6, 1921, show that on that day the general manager reported that the agreement with peti-

tioner included the removal of the two barns; that the larger of the two "had been destroyed by fire just after the reclamation board forces had begun to tear it down for removal"; and that petitioner had offered to accept five thousand dollars in warrants in settlement for the loss. The board thereupon approved petitioner's claim for the sum of five thousand dollars as stated.

Petitioner relies on the case of *Chapman* v. *State,* 104 Cal. 694 [43 Am. St. Rep. 158, 38 Pac. 458], wherein the court, in deciding a similar question, said that the cause of action "is not founded upon negligence constituting a tort, pure and simple and unrelated to any contract, but is substantially an action for damages on account of the alleged breach of a contract. . . . The principle that a state is bound by the same rules as an individual in measuring its liability on a contract is well expressed by Allen, J., in his concurring opinion in the case of *People* v. *Stephens,* 71 N. Y. 549, in which he said: 'The state in all its contracts and dealings with individuals must be adjudged and abide by the rules which govern in determining the rights of private citizens contracting and dealing with each other. There is not one law for the sovereign, and another for the subject. But when the sovereign engages in business and the conduct of business enterprises and contracts with individuals, whenever the contract in any form comes before the courts the rights and obligations of the contracting parties must be adjusted upon the same principle as if both contracting parties were private persons. Both stand upon equality before the law, and the sovereign is merged in the dealer, contractor, and suitor.' "

Respondent contends that the general manager was without authority to bind the reclamation board by his attempted contract with petitioner relative to the right of way and the removal of the buildings; that such contract was not reported to the board or ratified by it prior to the time the barn was burned; and that since there was therefore no valid contract between petitioner and the district existing at the time of the destruction of the building, the payment of petitioner's claim would be in the nature of a gift or extra compensation contrary to the express provisions of sections 31 and 32 of article IV of the state constitution.

[1] The board had authorized the general manager to make a definite offer to petitioner for a right of way through his land, including the removal of the buildings by the district at the latter's cost. The general manager made the offer and petitioner accepted it on the authorized terms. The district immediately took possession and commenced the construction of its works and the removal of the buildings. It is not perceived what element of a valid contract is wanting. Had the transaction been between private individuals under the same circumstances, an action for specific performance to compel a conveyance would lie. No reason is suggested why a different rule should apply where an agency of the state is a party. If the petitioner was bound by the agreement then, of course, the district was bound.

[2] If it be conceded that the agreement was unauthorized, yet, when the district took possession of the land and constructed its works thereon, it must be held to have ratified the agreement. It cannot knowingly accept and retain the benefits of an agreement made in its behalf, though unauthorized, and repudiate its liabilities thereunder. [3] The allowance of petitioner's claim by the reclamation board for the value of the barn destroyed was a ratification of the agreement and was equivalent to a previous authority. (*Power* v. *May*, 114 Cal. 207 [46 Pac. 6]; Id., 123 Cal. 147 [55 Pac. 796]; *Buck* v. *City of Eureka*, 124 Cal. 61 [56 Pac. 612]; *Crowe* v. *Boyle*, 184 Cal. 117 [193 Pac. 111]; *Sittig* v. *Raney*, 53 Cal. App. 789 [200 Pac. 824].)

[4] Having reached the conclusion that the district was bound by the terms of the agreement, it follows that the allowance by the board of petitioner's claim is conclusive upon the question of the district's negligence as well as of the compensation due petitioner therefor. (*Colusa County* v. *De Jarnett*, 55 Cal. 373; *McFarland* v. *McCowen*, 98 Cal. 329 [33 Pac. 113]; *McConoughey* v. *Jackson*, 101 Cal. 265 [40 Am. St. Rep. 53, 35 Pac. 863]; *McBride* v. *Newlin*, 129 Cal. 36 [61 Pac. 577]; *County of Santa Cruz* v. *McPherson*, 133 Cal. 282 [65 Pac. 574]; *County of Alameda* v. *Evers*, 136 Cal. 132 [68 Pac. 475]; *County of Yolo* v. *Joyce*, 156 Cal. 429 [105 Pac. 125]; *Victors* v. *Kelsey*, 31 Cal. App. 796 [161 Pac. 1006].)

It is ordered that a peremptory writ of *mandamus* be issued by the clerk of this court directed to the respondent

above named, requiring and directing him as state controller of the state of California to draw his warrant or warrants on the state treasurer of the state of California for the aggregate sum of five thousand dollars against the Sacramento and San Joaquin Drainage District fund, Feather River Assessment No. 7, in favor of said D. W. Carmichael in payment of the aforesaid claim.

Hart, J., and Burnett, J., concurred.