[Sac. No. 3738.   In Bank.—November 30, 1925.]

RECLAMATION DISTRICT No. 1500, Petitioner, v. THE RECLAMATION BOARD OF THE STATE OF CALIFORNIA et al., Respondents.

[1] RECLAMATION DISTRICTS—SALE OF WORK TO SACRAMENTO AND SAN JOAQUIN DRAINAGE DISTRICT—ACTUAL REASONABLE COST—DUTY OF RECLAMATION BOARD.—Reclamation District No. 1500 having proceeded to function by virtue of an act of the legislature (Stats. 1913, p. 130) and by so doing having reached the point in the course of completion of its construction work when it could enter into a contract with the Sacramento and San Joaquin Drainage District through its governing body, the Reclamation Board, for the taking over of the results of its operation, it became the duty of the Reclamation Board to investigate and determine as to what had been the actual reasonable cost of such construction work in order to arrive at the basis of compensation which should form the purchase price of the values to be taken over.

[2] ID.—ACTUAL REASONABLE COST OF CONSTRUCTION—DISCRETION OF RECLAMATION BOARD.—In such matter, conceding that the work done by the reclamation district had in all respects been legally, properly, and skillfully performed, the duty of determining the

"actual reasonable cost" thereof involved of necessity many details in the course of such construction and which would enter more or less intimately or necessarily into the outlay for such construction work; and this being so, the performance of its duty by the Reclamation Board would necessarily involve a large measure of discretion in order to determine just what items of expenditure in the long and involved course of such constructive work were or were not within the range of meaning to be given to the clause in the statute "actual reasonable cost of construction."

[3] ID.—EXIGENCIES OF PARTICULAR CASES—MATTERS TO BE CONSIDERED BY RECLAMATION BOARD.—To determine the actual reasonable cost of reclamation work performed by a reclamation district, the exigencies of each particular case and class of constructive work, such as whether "bank protection" was required to be done in order to protect and preserve the levees from the action of the stream, or the expedients to which the particular district undertaking such work in advance of the collection of the moneys by assessment or otherwise, which was ultimately to provide the means of payment therefor, might be driven, such as the discount of its warrants, must be considered by the Reclamation Board.

[4] ID.—AGREEMENT TO PAY FOR WORK PERFORMED—POWERS OF RECLAMATION BOARD—LEGISLATIVE INTENT.—It was not the intent of the lawmakers in attempting to deal with the complicated problem of reclamation and flood control within the region affected by the overflow of our great central rivers and in committing to specially formed reclamation districts within such region the work of construction of levees, by-passes, channels, etc., to so limit their powers in performing such work, and also the powers of the Reclamation Board in taking over the work which such districts had struggled to skillfully and properly perform, to hamper these respective public agencies as to either the performance of the work or as to the reasonable and adequate payment of the cost thereof when so far performed as to be ready to be turned over to the general drainage district under appropriate agreement.

[5] ID.—ITEMS TO BE CONSIDERED—DISCRETION OF RECLAMATION BOARD —FINALITY OF DETERMINATION.—It was the intent of the legislature to repose in the Reclamation Board the power and discretion of determining what particular items of expenditure in the course of construction come fairly within the meaning of the phrase "actual reasonable cost of construction"; and the determination of said board upon that subject is final in the absence of any showing of want of good faith or of abuse of such discretion; and hence the conclusion of said board thereon when expressed in their agree-

ment to take over said work and to pay a stipulated sum as the actual reasonable cost thereof is not to be disturbed by the court.

[6] ID.—WORK NOT WITHIN ORIGINAL PLANS—RIGHT TO COMPENSATION.—The fact that certain portions of the work of "Bank Protection" performed by Reclamation District No. 1500 were not within the terms or scope of the original or amended plans of the Sacramento and San Joaquin Drainage District, upon the basis of which its assessment of the lands within the entire district for the provision of funds for the ultimate payment of all construction work was predicated, was immaterial in considering the "actual reasonable cost of construction" of the work performed by said reclamation district, since whatever the original plans of the drainage district may have been they were in the nature of things tentative and in a large degree formative and hence subject to change as the work of reclamation and flood control developed.

[7] ID.—INTEREST PAYMENTS MADE BY RECLAMATION DISTRICT—REIMBURSEMENT BY RECLAMATION BOARD.—In view of the actual and present necessity of engaging in the work of levee construction and of pushing said work to completion as rapidly as the exigencies of the situation would permit, and of the practical compulsion open to the districts of either using their credit in the way of borrowing money to pay for the work or of issuing interest-bearing warrants therefor against the fund to be secured at some future time through the levy and collection of assessments within the districts to be benefited by the work, the question as to whether the sums actually expended by reclamation districts in dealing with such urgent situation through the issuance and eventual liquidation of interest-bearing warrants in payment for the work of levee construction were to be properly classed as costs of such construction was a question of fact for the determination of the Reclamation Board in concluding to take over such levees and other properties acquired in the course of such construction work; and said board having so determined and having fixed the amount of such expenditures in the way of interest at a specified sum agreed to be paid to the reclamation district, and there being no question as to the correctness of the amount, a writ should issue requiring the Reclamation Board and the drainage district to allow and to issue a proper warrant for the payment of the same.

[8] ID.—DELAYED PAYMENT OF LIQUIDATED SUMS—RIGHT TO INTEREST—LIABILITY OF STATE AGENCIES.—The rule laid down in section 1915 et seq. of the Civil Code, relating to the payment of interest

8. Liability of state agency for interest on its obligations in absence of statute or express contract, note, 17 L. R. A. (N. S.) 552. See, also, 23 Cal. Jur. 588; 15 R. C. L. 17.

for the detention or forbearance in the payment of liquidated sums of money, while doubtless applicable to ordinary debtors, has no application to state agencies or political subdivisions, the liabilities of which are entirely regulated by the statutes providing for their creation and the limitations of their powers.

[9] Id. — Delay in Issuing Warrants — Right to Interest Prior Thereto.—Neither the original act of 1911 nor the various statutes and the amendments thereto providing for the creation, powers, and functions of the Reclamation Board contain any provision therein for or permitting the payment of the interest upon the obligations of the Sacramento and San Joaquin Drainage District, of which the Reclamation Board is the governing body, until such time as warrants bearing interest as provided therein have been actually issued in payment of such obligations; and, where the Reclamation Board enters into a contract for the taking over of the results of the operations of a reclamation district, but there is delay in the issuance of warrants, the reclamation district is not entitled to recover interest on the contract price from the due date under the contract to the date of the warrants issued in payment.

(1) 36 C. J., p. 1003, n. 28.    (2) 36 C. J., p. 1013, n. 60.    (3) 36 C. J., p. 1003, n. 28.    (4) 36 C. J., p. 1013, n. 60.    (5) 36 C. J., p. 1003, n. 28.    (6) 36 C. J., p. 1003, n. 30.    (7) 36 C. J., p. 1003, n. 32.    (8) 33 C. J., p. 203, n. 54.    (9) 19 C. J., p. 629, n. 79.

PROCEEDING in Mandamus to compel the Reclamation Board and the Sacramento and San Joaquin Drainage District to allow and provide for the payment of certain sums alleged to be due, arising out of the construction of certain levees.    Writ granted.

The facts are stated in the opinion of the court.

Devlin & Devlin for Petitioner.

Stephen W. Downey for Respondents.

RICHARDS, J.—This application is for a writ of mandate whereby the petitioner seeks to have the respondents commanded to allow and provide for the payment of certain sums of money alleged to be due from the respondent Sacramento and San Joaquin Drainage District to the peti-

tioner, arising out of the construction of certain levees constituting a portion of the Sutter-Butte by-pass system of the Sacramento and San Joaquin Drainage District, and the purchase by the latter thereof from said petitioner. The original application contained four counts. By the first of these the applicant sought to have the respondents directed to allow and order paid the sum of $1,876,556.66, being a balance alleged to remain due and payable upon a certain contract made and entered into between the said applicant and the Sacramento and San Joaquin Drainage District upon the purchase price of said levees as provided for therein, said contract being known and designated as contract "A." By the second count the applicant sought a like writ requiring the respondent to allow and order paid the sum of $858,665.42 alleged to be due and payable upon a certain contract made and entered into between said applicant and said drainage district, known and designated as contract "B." By the third count the applicant sought to have the respondents directed to allow and order paid the sum of $312,962.19, the same being the amount of interest alleged to be due as of the date of October 10, 1924, upon the said balance of the purchase price of said levees as set forth in the first count of said application. By the fourth count the applicant sought to have the respondents directed to allow and order paid the sum of $97,470.40 alleged to be due and payable as interest upon the principal sum of $1,000,000 which was paid to said applicant according to the averments of the first count. These several counts in the applicant's original and amended petition, with the responses made thereto, will be treated in the order of their presentation. The facts out of which these several claims are alleged to have arisen are quite fully set forth in the decision of this court in the case of *Reclamation Dist. No. 1500* v. *Riley, etc.*, 192 Cal. 147 [218 Pac. 762], and hence will require but brief reference and review in this opinion. By its said decision in *Reclamation Dist. No. 1500* v. *Riley, etc., supra,* this court held that the contract made and entered into between Reclamation District No. 1500 and Sacra-

mento and San Joaquin Drainage District for the purchase of the levees of the former, which contract is known and designated in the first count of the original application herein as contract "A," was a valid and existing agreement between the parties thereto, and accordingly ordered a writ of mandate to issue commanding the immediate payment of the sum of $1,000,000, then due and payable by the terms of said contract, by the issuance of warrants against assessment No. 6 of the Sacramento and San Joaquin Drainage District for said sum.   According to the averments of the application herein the mandate of this court in the above proceeding was obeyed and the warrants called for therein were issued on October 3, 1923.   By the terms of said contract "A" it was provided that the purchase price of said levees should be the principal sum of $2,876,556.66 "which the reclamation board fixed and determined as the actual reasonable cost of said levees . . . without computing interest thereon, the amount of interest to be hereafter considered and fixed by the said Drainage District."   By the terms of the first count of the original application herein the balance remaining due upon the principal sum of said purchase price was averred to be the sum of $1,876,556.66. In their response to the said first count of their original application, the respondents, while admitting the making of said contract "A," averred that by a mutual mistake of the parties thereto the principal sum of the purchase price of said levees was stated to be the sum of $2,876,556.66, whereas it should have been stated to be $2,844,315.57.   The respondents further averred that in arriving at the total principal sum which should represent the "actual reasonable cost" of the construction of said levees the Reclamation Board, acting for said drainage district, included therein certain items which formed no proper part of the cost of construction thereof, and that as to these items the said Reclamation Board exceeded its statutory power in the inclusion of the same in the total principal sum agreed to be paid as the purchase price of said levees.   The respondents made certain other averments which, in addition to those above referred to, presented disputed

issues of fact, in consequence whereof this court upon the first hearing upon said application had on November 24, 1924, referred the proceeding to Honorable Peter J. Shields, Judge of the superior court of the state of California, in and for the county of Sacramento, to take testimony and report the same and his findings thereon to this court. By said order, which was made and entered by consent, it was further provided that since the answer of the respondents admitted that there was at least an additional $1,000,000 due and owing to the petitioner upon said contract "A," it was therefore ordered that said sum be applied thereon by warrant to be issued therefor and when issued to be credited upon the demand set forth in the first count of said application. It was further provided in said order that a supplemental petition should be filed by the petitioner setting forth the substance of said order, and that said order was made and was to be complied with without prejudice to the rights and claims of either of the parties to this proceeding as set forth in their respective pleadings, or to the right of the court to fully hear and determine all of the matters and issues presented therein. In compliance with said order the said sum of $1,000,000 was duly applied upon the purchase price of said levees as provided for in said contract "A"; and also in pursuance thereof a hearing was duly had before said referee. Pending said hearing and prior to the conclusion thereof and filing of the report and findings of said referee, the parties hereto on March 3, 1925, appeared in open court and the petitioner therein conceding that owing to a mutual mistake the purchase price of said levees as named in said contract "A" should be the sum of $2,844,-315.57 instead of the sum of $2,876,556.66 as stated therein and that there should be a reduction from said latter amount to the extent of $32,241.09; and it further appearing from the evidence already taken before said referee "that the total amount of the items contested by respondent upon Contract 'A' do not exceed the sum of Four Hundred Forty-one Thousand Nine Hundred Fifty-seven and 65–100ths Dollars ($441,957.65), being Three Hundred Eighty-three Thousand Four Hundred Eight and 77–100ths Dollars ($383,408.77) for bank protection, and Fifty-eight Thousand Five Hundred Forty-eight and 88–100ths Dollars ($58,548.88) for financing the Ajax Dredging Co. contract, a total of Four Hundred

Forty-one Thousand Nine Hundred Fifty-seven and 65–100ths Dollars ($441,957.65), and that in addition to the allowance of One Million Dollars ($1,000,000.00) allowed by this court by its order dated November 24, 1924, and paid by warrant, it was suggested on the part of the petitioner there might be allowed an additional sum of Four Hundred Two Thousand Three Hundred Fifty-seven and 92–100ths Dollars ($402,357.92), being the amount named in Contract 'A,' less Thirty-two Thousand Two Hundred Forty-one and 09–100ths Dollars ($32,241.09) deducted on account of mutual mistake, less Two Million Dollars ($2,000,000.00) heretofore paid by warrants, and less Four Hundred Forty-one Thousand Nine Hundred Fifty-seven and 65–100ths Dollars ($441,957.65) being contested by respondent, upon said Contract 'A' ''; and that an order in accordance with the foregoing conceded facts might be made; and there being no objection on the part of the respondents to said order it was thereupon made in conformity therewith and the said respondents were thereby ordered to allow and issue warrants for the payment of the sums thus conceded to be due and payable upon said contract ''A'' without prejudice to the rights and claims of either of the parties hereto as to any balance remaining due or payable upon said contract ''A'' or of the court to hear and determine the same. Thereafter and on May 6, 1925, the petitioner herein pursuant to the order of this court directing the filing of a supplemental petition herein filed its amended and supplemental petition wherein it set forth the substance of the two orders of this court above referred to and the fact that the same had been complied with, and further alleging that as a result of the making of said orders and of the compliance therewith there remained but two contested items under the first count in said petition to be disposed of by this court, to wit, the sum of $380,408.77 alleged by said petition to be properly embraced within the terms and amount provided in said contract ''A'' as part of the purchase price of said levees, expended by the petitioner for ''Bank Protection'' and the further sum of $58,548.88 also recoverable under said contract ''A'' as expended by petitioner ''For financing the Ajax Dredging Company contract''; and for the allowance and payment of which two said sums the petitioner still contended a writ of mandate should issue. To this amended

and supplemental petition the respondent presented and filed an answer admitting those portions thereof which purported to set forth the substance of the prior orders of this court and the compliance therewith, but denying liability upon the remaining two items alleged to be covered by said contract "A." The report and findings of the referee upon the hearing had before him were presented and filed on April 28, 1925. As to the two remaining items above referred to as embraced within the terms and amounts due and allowable under said contract "A" the report and findings of the referee were in substance as follows: The terms "Bank Protection" embraced such work done in the course of construction of the sloping banks of the levees within Reclamation District No. 1500 as consisted in the planting of such willows and other vegetation along the bases and sides of said levees as would conduce by their rootage and growth to solidify and thus protect the same from the disintegrating action of the waves and currents of the passing or impinging waters, and also of the building of pile and timber bulkheads to break the effect of wave action and of cobble revetment of the levee slopes at places for the same purpose. As to the cost and details of such work the report of the referee shows that it was provided in the amended plans and estimates of Sutter-Butte by-pass project assessment No. 6 that such protection against the waves and currents of the stream should be provided along that portion of the levees contemplated by such plans and estimates and lying within Reclamation District No. 1500, and that the estimated cost thereof for the east levee of said reclamation district which constituted the west levee of Sutter by-pass was the sum of $198,900 and of such work upon the easterly end of the north levee of said district, which constituted the south levee of Tisdale by-pass, was the sum of $8,670, making a total estimated cost of such work of bank protection upon the east and north levees of said Reclamation District No. 1500 the sum of $207,570. When Reclamation District No. 1500 came to plan, estimate, and perform this work of bank protection upon its said levees in course of construction its estimate of the cost of such work upon its said east levee was $223,775 and its said plans therefor were duly reported to and approved by the State Reclamation Board. No amount was at that time estimated or approved for bank pro-

tection upon said north levee.   By a subsequent amendment of the plans of Sutter by-pass project No. 6 made after the foregoing work of bank protection had been completed by Reclamation District No. 1500, but before the purchase of its said levees by virtue of contract "A," the foregoing items referring to bank protection were omitted from said plans and estimates.   The referee, however, finds that the bank protection work which was actually done by Reclamation District No. 1500 was desirable for the protection of said levees in order to prevent their destruction by the beating of water against them and was done in accordance with the highest engineering skill and advice;·and that the total amount expended by said reclamation district therefor was the sum of $383,408.77, which gross sum embraced an item of cost for bank protection of a portion of the south levee of Tisdale by-pass, amounting to $129,448 in excess of the amount originally provided for this particular work in the original plans and estimates of Sutter-Butte by-pass project No. 6.   The gross sum above given also included the sum of $115,457.30 expended by Reclamation District No. 1500 for work done in Tisdale by-pass channel which was never included in either the original or amended plans and estimates of Sutter-Butte by-pass project No. 6, but which was also done to protect the Tisdale by-pass levee from destruction and was done with the highest engineering skill and advice. All of the foregoing work of bank protection was reported to and was under consideration by the Reclamation Board when in the year 1919 it was considering the purchase from Reclamation District No. 1500 of its levee system, which purchase was in the course of consummation through the execution of contract "A"; and as a result of such consideration by the auditors and engineers of said Reclamation Board a resolution was duly adopted by said board approving the plans and work of Reclamation District No. 1500 with regard to bank protection and the sum allowed therefor was then fixed at a total of $383,408.77 and was included within the terms of said contract "A" as a part of the reasonable cost of the construction of said levees, and as the principal sum actually expended by said Reclamation District No. 1500 for such work in warrants issued therefor without calculating interest upon such warrants.   The respondents challenge the right of the petitioner to have these items for bank protec-

tion allowed and ordered paid upon grounds hereinafter to be stated and commented upon.

As to the amount claimed by the petitioner upon the item embraced in contract "A" designated as "Ajax Dredging Company Contract," the referee's report explains said item in substance as follows: In the year 1918 Reclamation District No. 1500 entered into a contract with Ajax Dredging Company for the construction of a certain portion of its levees in accordance with the plans of reclamation approved by the Reclamation Board. By the terms of said contract the district was to pay the contractor the cost of the agreed work plus twelve and one-half per cent and was to make such payments monthly as the work proceeded; and the contract further provided that if such payments were made in warrants issued to the contractor, the district was to make some arrangement by which said contractor should receive cash on account of these monthly payments. The district had at said time no cash with which to pay warrants and it therefore seemed to be necessary to the progress of said work that the district should, as it did, make arrangements for the discounting of its said warrants at the rate of 11.11 per cent. This resulted in an expenditure on account of the said percentage of profit to the contractor above cost of $58,679.60, and of a further expenditure on account of said discounts of the sum of $58,548.88, both of which said amounts were actually expended by said Reclamation District No. 1500 during the course of the fulfillment of its said contract with the Ajax Dredging Company for the construction of said levees. Both of these foregoing amounts were included within the terms of contract "A" after the bases therefor had been fully examined into by the officers and agents of the Reclamation Board. The respondents challenge the validity of the allowance only of the discounts in said contract "A" and that only upon the ground that discounts of this character constituted no part of the cost of construction of the levees and hence that the Reclamation Board had no power to allow or contract to pay the same.

Dealing first with the objections which the respondents urge against the validity of the claims of the petitioner for the items embraced within the total sum provided in contract "A" to be allowed for "Bank Protection," we find that said objections differ as to each of the said items included

within said total sum.  As to the item of $138,509.47, which
represents work done by Reclamation District No. 1500 upon
its levees at a time when the doing of such work was in-
cluded within the details of the original plan of the Recla-
mation Board upon the basis of which the assessment of
Sutter-Butte by-pass project No. 6 was to be predicated,
it is urged by respondents that the subsequent amendment
of said plan by the Reclamation Board must be given the
effect .of eliminating this class of work from inclusion in
the cost of construction of levees to be paid for out of the
funds to be raised by said assessment.  We are not disposed
to look with favor upon this contention as to this particular
item for the reason that it is conceded that at the time said
Reclamation District No. 1500 actually made this expenditure
in the course of the construction of its said levees it was con-
forming to the then existing plan approved by said Reclama-
tion Board and hence that the latter board ought not to be al-
lowed by any changes in its original plan to work an injury
to the petitioner which had proceeded in good faith to do
a particular and necessary kind of constructive work upon
its levees in conformity with the then existing plan and pur-
pose of said Reclamation Board.  The objection which the
respondents urge to the validity of the item of $129,448,
part of the sum total allowed for ''Bank Protection'' is that
the work for which said sum was agreed to be paid in con-
tract ''A'' was never wholly included within the original
plan of the Reclamation Board for the work to be done upon
the south levee of the Tisdale by-pass, but only a small por-
tion thereof and hence as to such excess it cannot be legally
allowed.  As to the item of $115,451.30 constituting the
balance of said total sum allocated in said contract ''A''
to ''Bank Protection'' the objection of the respondents is
that the particular work upon the Tisdale by-pass channel
for which said charge is made was done under the express
stipulation embodied in the order of the Reclamation Board
dated September 16, 1919, approving the plans of said Recla-
mation District No. 1500 for the doing of said work, wherein
it was provided that ''all of the expenses of said work were
to be borne by the district.''  It is to be noted, however,
in respect to this particular objection to this item that the
resolution of said Reclamation Board above referred to ante-
dated contract ''A'' nearly three years and that the same

was, therefore, passed and adopted at a time when no contract existed for the purchase of said levees by the drainage district from Reclamation District No. 1500 and when the latter was proceeding to do its construction work as an independent entity operating in co-ordination with the general plans and purposes of the drainage district, and its governing body, the Reclamation Board, but bearing for the time being the whole expense and burden of levee and channel construction. Viewed in this light, the provision in the resolution of the Reclamation Board in the year 1919 cannot be held to be a limitation upon its power by later contract with the petitioner to agree to include in the purchase price of said levees the amount thus early expended by the latter for channel construction and covered by the aforesaid item of expense, provided always that said particular work comes fairly within the meaning of the phrase "actual reasonable cost of construction."

We are thus brought to a consideration of the controlling question underlying the allowance or disallowance of these several items embraced within the sum total agreed to be allowed and paid for "Bank Protection"; and also agreed to be allowed on account of the Ajax Dredging Company contract, by the terms and agreements embraced in contract "A." It is the question of the power of the Reclamation Board as the governing body of Sacramento and San Joaquin Drainage District to enter into contract "A" and to bind said drainage district to each and all of the terms of said contract. In its decision of the case of *Reclamation District No. 1500* v. *Riley, etc.,* 192 Cal. 147 [218 Pac. 762], this court had occasion to deal with the powers of said Reclamation Board with respect to the work of reclamation, flood control, and levee construction within Sutter-Butte by-pass project No. 6 in general and also with reference to contract "A" in particular. It was our conclusion expressed therein after a careful review of the history and legislation affecting the vast problem of reclamation and flood control in that region that the Reclamation Board, which was and is the governing body of Sacramento and San Joaquin Drainage District, was empowered by the legislature to employ three methods for carrying the twofold purpose for which said drainage district has been constituted into effect. The first of these was by direct action of the

Reclamation Board in making contracts for the doing of the work of building levees, creating by-pass channels and generally subserving the objects of reclamation and flood control; second, by providing for the organization and functioning of subsidiary reclamation districts within particular areas of the general district with power to operate in the construction of portions of the work to be done within such areas under the general plan and supervision of the Reclamation Board and receive compensation therefor by the presentation and allowance of claims for the cost of such construction by the Reclamation Board; third, by permitting such reclamation districts operating in specific areas to proceed with such work as though they were measurably independent entities subject, however, to the general regulations of the statutes governing the methods of doing such work; and when such work was so done or in the course of being done the result thereof in the form of levees, channels, rights of way, etc., might by said reclamation district so undertaking the same be transferred to the general drainage district under contracts which should provide for taking over such construction work and all rights and values acquired in the course of prosecuting the same upon payment by the general drainage district of the "actual reasonable cost of construction." In that connection this court said:

"It was evidently not the intention of the legislature to vest in the reclamation board the sole power of carrying out the plan in detail, for it provided that any reclamation district, levee district, drainage district, or municipal corporation should have the right to acquire rights of way, or other easements, and to construct levees, cuts, canals, or gates, subject, of course, to the approval of the plans by the reclamation board, which works might be conveyed to the drainage district upon compensation being made of the actual reasonable cost. In other words, it was contemplated that the different owners and agencies interested in flood control and reclamation of the lands should work in conjunction with the drainage district; the drainage district supplementing the work of other agencies whenever necessary or desirable for the carrying out of the general plan." (Stats. 1913, sec. 18, pp. 268, 275; *In re Sutter-Butte By-Pass Assessment No. 6, etc.,* 191 Cal. 650, 658 [218 Pac. 27, 30].)

[1]   It was under the third of these methods that Reclamation District No. 1500 proceeded to function by virtue of an act of the legislature creating such reclamation district and defining its powers. (Stats. 1913, p. 130.)   Having done so and having by so doing reached the point in the course of completion of its construction work when it could enter into a contract with the Sacramento and San Joaquin Drainage District through its governing body, the Reclamation Board, for the taking over of the results of its operation it became the duty of the Reclamation Board to investigate and determine as to what had been the actual reasonable cost of such construction work in order to arrive at the basis of compensation which should form the purchase price of the values thus to be taken over.   [2]   Conceding, as is done in this case, that the work thus far done by the reclamation district had in all respects been legally, properly and skillfully performed, the duty of determining the "actual reasonable cost" thereof involved of necessity many details in the course of such construction and which would enter more or less intimately or necessarily into the outlay for such construction work; and this being so the performance of its duty by the Reclamation Board in the foregoing respect would necessarily involve a large measure of discretion in order to determine just what items of expenditure in the long and involved course of such constructive work were or were not within the range of meaning to be given to the clause in the statute "actual reasonable cost of construction."   [3]   The exigencies of each particular case and class of constructive work would have to be consedered; as, for example, whether "Bank Protection" was required to be done in this or that reclamation district in order to protect and preserve the levees from the action of the stream.   Or, to take another example which might well arise out of the fact that reclamation districts undertaking to do construction work within their area and under the statute have at the outset no funds on hand for the prosecution of work which insistently must be begun and completed and which must in one form or another be paid for as the work proceeds in order that it may proceed at all, the ·expedients to which the particular district undertaking such work in advance of the collection of the moneys by assessment or otherwise, which was ultimately to provide the means of payment

therefor, might be driven, such as the discount of its warrants, are matters which from the peculiar nature of the case the Reclamation Board must consider in applying to the situation the provision as to "actual reasonable cost of construction." [4] It was surely not the intent of the lawmakers in attempting to deal with the complicated problem of reclamation and flood control within the region affected by the overflow of our great central rivers and in committing to specially formed reclamation districts within such region the work of construction of levees, by-passes, channels, etc., to so limit their powers in performing such work, and also the powers of the Reclamation Board in taking over the work which such districts had struggled to skillfully and properly perform, to hamper these respective public agencies as to either the performance of the work or as to the reasonable and adequate payment of the cost thereof when so far performed as to be ready to be turned over to the general drainage district under such agreements as are to be found embodied in contract "A." [5] In order to prevent such consequences we are of the opinion that it was the intent of the legislature to repose in the Reclamation Board the power and discretion of determining what particular items of expenditure in the course of construction came fairly within the meaning of the phrase "actual reasonable cost of construction"; and that the determination of said board upon that subject is final in the absence of any showing of want of good faith or of abuse of such discretion; and hence that the conclusion of said board thereon when expressed in their agreement to take over said work and to pay a stipulated sum as the actual reasonable cost thereof is not to be disturbed by us herein. (*Carmichael* v. *Riley,* 56 Cal. App. 409, 413 [205 Pac. 478], and cases cited.) [6] In respect to the suggestion made by respondents that certain portions of the work of "Bank Protection" were not within the terms or scope of the original or amended plan of the drainage district upon the basis of which its assessment of the lands within the entire district for the provision of funds for the ultimate payment of all construction work was predicated, we do not regard this fact as having any particular significance, since whatever the original plans of the drainage district may have been they were in the nature of things tentative and in a large degree formative

and hence subject to change as the work of reclamation and flood control developed, and were not intended to present any hard-and-fast rule which should operate to hamper the powers of the Reclamation Board in either changing from time to time its original plans for flood control or in finally determining to take over work which individual districts had undertaken to do; and in so doing to determine what particular items of expenditure in the course of doing such work should be included in the "actual reasonable cost of construction." We therefore arrive at the conclusion that as to the remaining items included within the terms of contract "A" and going to make up the total sum provided therein to be allowed and paid by warrants duly issued by the Reclamation Board the petitioner is entitled to its writ.

[7] The second count in the petitioner's application for a writ of mandate herein involves the question as to the effect to be given to another contract between the parties to this proceeding known and designated as contract "B." Under the express terms of contract "A," above considered, after providing for the allowance and payment of the sum named therein as the principal sum due and payable as the actual reasonable cost of the said levees and rights of way transferred thereby, it was further provided "that the above-mentioned amounts or payments do not include in any way interest charges that may have accrued upon any payment or expenditures made for the cost of construction of these levees and rights of way by said Reclamation District at any time and that said Drainage District reserves unto itself the right to consider and act upon any claim which may in the future be presented by said Reclamation District for such interest and other charges, and said Reclamation District reserves unto itself all its claim and demand for such interest and other charges and enters into this contract without prejudice to said claim and demand for such interest and other charges to be hereafter presented." Thereafter and on November 9, 1922, that certain agreement known and designated as contract "B" was entered into between the parties hereto, wherein, after referring to the foregoing resolution in contract "A" and after reciting that the Reclamation Board had computed the amount of interest referred to in said former agreement and had found the same to amount to $858,665.42, it was agreed that the

drainage district should pay said sum as interest upon the principal amount expended for said levees and rights of way as of date of May 22, 1922. It is for the enforcement of this agreement that the petitioner has included the second count in its said application, and it therein alleges that the petitioner in seeking the issuance of said writ does not claim interest as such on any investment or by way of profit, but seeks reimbursement only for such payments and outlays as were actually and compulsorily made by it under the law requiring it to pay interest on its warrants issued for and during the construction of its said levees, and that the sum set forth and agreed to be paid in said contract "B" is wholly made up of such necessary outlay. The answer of the respondents to the second count of said application put in issue the allegations of the petitioner in the foregoing regard and hence upon the first hearing before this court this disputed matter was also referred to the referee for his report and findings thereon. According to the report and findings of said referee "the amount stipulated to be paid in Contract 'B,' to wit, eight hundred fifty-eight thousand six hundred and sixty-five and 42–100ths dollars is the interest paid out by Reclamation District No. 1500 upon its warrants issued in payment of the items and each of the items included in Contract 'A' from the date of the issuance of said warrants to and including May 22, 1922." It thus appears that the recitals of contract "B" as to the correctness of the amount agreed to be paid thereby and as to what said amount represents, and the report and findings of the referee, are in accord and must therefore be taken to be true. It is, however, the contention of the respondents that the question as to whether interest upon warrants issued by the reclamation district in the course of its construction work can be allowed as a part of the "actual reasonable cost of construction" is not a question of fact which the Reclamation Board had jurisdiction to determine and allow, but is a question of law for this court to determine, and that as a matter of law interest is not allowable as a part of cost of construction, and hence that contract "B" in so far as it undertook to allow and provide for the payment of the same is void. The respondents cite certain cases from other jurisdictions holding that in ordinary cases of contracts for construction of various structures interest has not

been allowed as part of the cost of such construction. We have no quarrel with the conclusion arrived at in these cases, but we are of the opinion that these cases have no application to the unique situation presented in the instant proceeding. Under the several acts of the legislature providing for the formation of a number of reclamation districts for the furtherance of the work of levee construction under the general plan of reclamation and flood control in accordance with which the Reclamation Board and the Sacramento and San Joaquin Drainage District came into being, these several reclamation districts were organized for the purpose of promoting intensively the much needed work of flood control in that region. Under these statutes governing their organization and activities they were empowered to proceed at once with this construction work but were provided with no immediate funds with which to so proceed, their only resource being that of levying assessments upon the lands within their respective districts pursuant to the provisions of chapter 1 of article I of title VIII of part 3 of the Political Code. Confronted with the actual and present necessity of engaging in the work of levee construction and of pushing said work to completion as rapidly as the exigencies of the situation would permit, and confronted also with the practical compulsion of financing said work as the same proceeded, there was no other recourse open to these districts than that of either using such credit as they might have in the way of borrowing money to pay for such work as it went on or of issuing interest-bearing warrants therefor against the fund to be secured at some future time through the levy and collection of assessments within their respective districts to be benefited by the prosecution and completion of the work of levee construction and of flood control. In such a situation we are of the opinion that the question as to whether the sums actually expended by these reclamation districts in dealing with an urgent situation through the issuance and eventual liquidation of interest-bearing warrants in payment for the work of levee construction were to be properly classed as costs of such construction was a question of fact for the determination of the Reclamation Board in concluding to take over such levees and other properties acquired in the course of such construction work. Having so determined and having fixed the amount of such expendi-

tures in the way of interest as the sum named in contract "B," and there being in view of the report and findings of the referee no further question as to the correctness of said amount, it is our conclusion that a writ should issue requiring the respondents to allow and to issue a proper warrant for the payment of the same.

This brings us to a consideration of the three remaining counts in petitioner's application and as to these a different situation arises. By the third count therein the petitioner seeks to have the writ of mandate issued to compel the allowance and payment of the sum of $312,982.19, being the amount of interest which the petitioner claims to be due and payable upon the balance of the purchase price of said levees as set forth in said contract "A" and which accrued thereon between May 22, 1922, the date of said contract "A," and the tenth day of October, 1924, and also for such further sum as has accrued thereon since said last-named date. By the fourth count in its said application the petitioner seeks to have a like writ issued to compel the allowance and payment of the sum of $95,470.40 claimed to have accrued as interest upon the sum of the $1,000,000 which was paid to the petitioner by warrants issued and registered on October 3, 1923, in accordance with the terms and agreements of said contract "A" which was made and entered into on May 22, 1922, and by which it was provided that said sum of $1,000,000 should be immediately allowed and paid by the issuance of such warrants therefor. By the fifth count to its said application, added by its amended and supplemental application, the petitioner seeks to have a like writ issued to compel the allowance and payment of the sum of $180,319.73 claimed to be due and payable as interest upon the sum of $858,665.42 agreed to be allowed and paid by the terms and agreements of contract "B," said interest being computed thereon from May 22, 1922, to May 22, 1925, together with such further sum as may be found to be due and payable thereon after said last-named date and up to the time of the issuance of said writ. It is to be observed that these three last counts in the petitioner's original and amended applications relate to several sums of money which are claimed as accrued interest upon certain principal sums of money which the respondents agreed to allow and issue warrants for the payment of by and in

contracts "A" and "B," but for portions of which the issuance of interest-bearing warrants was for some time delayed and for other portions of which no warrants have as yet been issued.  The petitioner urges at considerable length and with much apparent show of fairness that the petitioner is entitled to receive these several allowances of interest upon said principal sums heretofore in said two contracts agreed upon for the·reason that the principal sums upon which it is claimed such interest is due are ultimately to be payable out of the assessment (or the bonds issued in lieu thereof) which has been levied upon the property owners of the entire drainage district of which the land lying within petitioner's reclamation district is a part and that since such assessment, or bonds, is presently drawing interest which the land owners within petitioner's district will eventually have to pay, they should presently be allowed interest upon the several principal sums which the said drainage district has already agreed to pay petitioner on their account, otherwise the interest which these land owners will eventually have to pay upon their assessment or upon the bonds issued or to be issued in lieu thereof will have eaten up the principal sums now and for some time past due and payable to the petitioner on their account.  To these equitable considerations the respondents make an equally long and learned reply in the endeavor to show that these matters will eventually work out the equities which the petitioner now invokes. It seems to our minds, however, that these arguments *pro* and *con* are largely speculative and that the proposition thus presented is one which it is not our province at this time to attempt to solve; and that there is a more direct answer to the petitioner's present contention.  [8]  It is this, the petitioner insists upon the application of the rule laid down in sections 1915 et seq. of the Civil Code, relating to the payment of interest for the detention or forbearance in the payment of liquidated sums of money.  This rule, while doubtless applicable to ordinary debtors, has no application to state agencies or political subdivisions, the liabilities of which are entirely regulated by the statutes providing for their creation and the limitations of their powers.  This question is practically set at rest by the decision of this court in the case of *Engebretson* v. *City of San Diego*, 185 Cal. 475 [197 Pac. 651], wherein the doctrine as laid down in

Ruling Case Law (15 R. C. L., sec. 14, p. 17) in the following language was approved: "It is well settled, both on principle and authority, that a state cannot be held to the payment of interest on its debts unless bound by an act of the legislature or by a lawful contract of its executive officers made within the scope of their duly constituted authority. This principle applies to bonds, claims, judgments and warrants. The theory upon which the rule is based is that whenever interest is allowed either by statute or by common law, except in cases where there has been a contract to pay interest, it is allowed for delay or default of the debtor. But delay or default cannot be attributed to the government. It is presumed to be always ready to pay what it owes. The apparently favored position of the government in this respect has been declared to be demanded by public policy." The court further pointed out that in the case of *Savings etc. Soc.* v. *San Francisco,* 131 Cal. 356, 363 [63 Pac. 665], it was held that section 1915 et seq. of the Civil Code do not apply to the state or any of its subdivisions, citing abundant additional authority in support of such conclusion. In the more recent case of *McNutt* v. *Los Angeles,* 187 Cal. 245, 249 [201 Pac. 592], the same principle is recognized by the court in stating that "as against the state or a municipality thereof interest cannot be recovered except under special statutory authorization." [9] We have examined the various statutes and the amendments thereto which have been adopted since the original act of 1911 providing for the creation, powers, and functions of the Reclamation Board and we nowhere find any provision therein providing for or permitting the payment of interest upon the obligations of the drainage district of which it is the governing body until such time as warrants bearing interest as provided therein have been actually issued in payment of such obligations. In so far as such warrants have already been issued for the payment of the obligations of said drainage district recognized and agreed to be paid by virtue of contracts "A" and "B" above referred to the petitioner is receiving or is entitled to receive interest thereon, but in so far as warrants have not as yet been issued by the respondents for the payment of such sums as are referred to in its application herein and which form the basis of the third, fourth, and fifth counts

in its original and amended applications herein it is entitled to no present relief in the instant proceeding.

Let a writ issue in accordance with the conclusions arrived at in the foregoing decision.

Myers, C. J., Lawlor, J., Seawell, J., Waste, J., Shenk, J., and Lennon, J., concurred.

Rehearing denied.