[No. 1723, January 14, 1915.]

# STATE ex rel. LORENZINO v. COUNTY COMMIS-SIONERS OF McKINLEY COUNTY.

## SYLLABUS BY THE COURT.

1. When the words of a statute are not explicit, the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and the objects and remedy in view; and the intention is to be taken or presumed, according to what is consonant to reason and good discretion.

P. 72

2. Section 1, c. 115, Laws 1905, which prohibits the granting of a license for the sale of intoxicating liquor at any place, except within the limits of a city, town, or village containing at least 100 inhabitants, does not justify the issuance of such a license for the sale of liquor in an isolated building more than 1,800 feet distant from any other house in an unincorporated village; the building being located upon a patented homestead claim of 160 acres, upon which no other residences have been erected, save the applicant's, and beyond which there are no other buildings for some miles, as such building is not "within the limits" of such village.

P. 72

Appeal from District Court, McKinley County; Herbert F. Raynolds, Judge.

Mandamus by the State, on relation of O. Lorenzino, against the County Commissioners of McKinley County, New Mexico. From judgment for defendants, relator appeals. Affirmed.

ALFRED RUIZ of Gallup and JOHN VENABLE of Albuquerque, for appellant.

The territory embracing the Diamond Coal Camp, relator's saloon building and residence is a village for the

. purpose of granting license for sale of intoxicating liquor.
See sections 4123 and 4124, C. L. 1897; sec. 1, chapter 115, Laws of 1905.

In order to determine the meaning of an unorganized village reference must be had to other laws and to decisions of the court upon other statutes.

Sec. 1, chapter 117, Laws 1909; chapter 27, Laws 1912; People of Utah v. Thos. McCune, 35 L. R. A. 396, and notes; State, etc. v. Village of Minnetonka, 25 L. R. A. 755, and notes.

The words "city, town and village" as used in our statute must have been used by the Legislature in their common and popular sense, meaning an assemblage of houses, partly or wholly used as residences, which are substantially nearer to each other than are the houses generally in the surrounding country.

State v. Lammers, 113 Wis. 398, 89 N. W. 501; Territory v. Stewart, 1 Wash. St. 98, 23 Pac. 405; Toledo, etc., R. Co. v. Spangler, 71 Ill. 568; Ill. Cent. Ry. Co. v. Williams, 27 Ill. 48; People v. McCune, 14 Utah, 152, 46 Pac. 658; State v. Meek, 26 Wash. 405, 67 Pac. 76; Town, etc. v. Jordan, 119 U. S. 680; Ex Parte Foley, 62 Cal. 508; Cooper v. Town of Shelbyville, 57 S. W. (Tenn.) 429; City of Denver v. Coulihan, 20 Colo. 471; Town of Enterprise v. State, 29 Fla. 128.

Relator is within the limits of a village as contemplated by sec. 4124, C. L. 1897, as amended.
People v. McCune, supra.

MANUEL U. VIGIL and M. E. HICKEY, of Albuquerque, for appellee.

The only questions before the court are what are the limits of the village of Allison, and is appellant's saloon building within those limits.

The word "village" has been variously construed by different courts, some giving it a strict meaning while others

have given it a liberal meaning. In all the cases the courts have construed the word so as to accomplish the purposes for which the various acts were passed.

Toledo W. & W. Ry. Co. v. Spangler, 70 Ill. 569.

Applying the same rule to the case at bar, the court should restrict the limits of a village rather than enlarge them.

Under sec. 4124, C. L. 1897, a saloon could be established within a precinct without reference to the number of inhabitants. Sec. 1, c. 115, Laws 1905, restricted the issuance of saloon licenses to cities, towns and villages containing at least 100 inhabitants. The intention of the Legislature in passing the amendment was to prevent the establishing of saloons in sparsely settled districts. As to what has been held to constitute a village, see, In Re incorporation of Village of Edgewood, 18 Atl. 646; 40 Cyc. 207. An unorganized village is not necessarily as large as an organized village.

The Legislature recognized that there are villages of less than one hundred inhabitants. Sec. 2, chapter 27, Laws 1912; sec. 1, chapter 115, Laws 1905. Therefore the court may find that a collection of houses in which one hundred or more people live, is an unorganized village.

## STATEMENT OF FACTS.

O. Lorenzino, the relator and appellant herein, on the 26th day of December, 1913, made application to the assessor of McKinley county for a license to conduct and operate a saloon, as a retail liquor dealer, in the unincorporated village of Allison, said county. The said assessor filed the application with the board of county commissioners of said county, which board thereafter, on the 14th day of February, 1914, denied the application and refused to issue the license. Thereafter, on the 26th day of February, 1914, appellant filed his petition with the district court of said county, praying that an alternative writ of mandamus issue out of said court, directing and compelling the said board of county commissioners to grant and issue said license. The alternative writ was

issued, and later the board filed its answer. The cause was submitted to the court, upon an agreed statement of facts, which, after showing the preliminary facts as to the application of the license, composition of the board, refusal to grant the license, etc., proceeded as follows:

"(5)   The building in which the said O. Lorenzino, the relator herein, intends to run, operate, and conduct said saloon is 1,836.5 feet in a straight line from the last house in said village situated on the lands owned and operated by the Diamond Coal Company.

"(6)   The relator, O. Lorenzino, is a voter in precinct 17, McKinley county, N. M. The polling place of said precinct is in the village of Allison. Said O. Lorenzino receives his mail at the post office in said town, has a post office box in said post office, and trades at the store in said village. The public schoolhouse is situated in the village of Allison. Precinct 17, consisting of sections 7, 8, 17, 18, 19, and 20, is a part of the Gallup school district and the school taught in said village is under the supervision of the superintendent of the Gallup schools. The relator pays taxes in precinct No. 17. The post office, store, and voting place are located on section 18 of said precinct.

"(7)   The Diamond Coal Company owns section 18 and all of the houses, buildings, and improvements thereon, excepting the schoolhouse already mentioned, which is public property and belongs to the Gallup school district, and except said saloon building of Lorenzino, which was erected at its present location without the permission of the Diamond Coal Company. Said houses for residents are arranged along regular streets, and a water system is maintained and operated by the Diamond Coal Company to furnish water to the houses, for domestic purposes and fire protection.

JANUARY TERM, 1915. 71

State ex rel. Lorenzino v. Co. Commrs., 20 N. M. 67

"(8) Directly north of the houses situated in section 18, it is some miles to any other building. In a northeasterly direction there are two houses situated about a half mile and a mile respectively from the nearest house on section 18. In a westerly direction it is about two miles from the nearest house, and on the south there is one house within about a mile, and another within about three-fifths of a mile from the nearest house on section 18. Gallup is a little north and east of the southernmost house on section 18, and about two miles and a quarter away. There is no building between the proposed saloon and the town of Gallup, about two miles away in an easterly direction.

"(9) O. Lorenzino has resided within precinct No. 17 at his home on the southern part of the northwest quarter of section 20 for about 18 years, and has a patent to said land. Buildings on sections 8, 18, 19, and 20 are all within said precinct 17.

"(10) A blueprint, marked 'Exhibit A,' is attached to this statement of facts and made a part hereof. The location of all the buildings, water tanks, water mains, water and fire hydrants, and other improvements on sections 18, 19, and 20, as shown thereon, are to be taken by the court as showing their true location and distances, except that the saloon building located at the extreme southeast portion of section 18 is shown on said blueprint only for the purpose of showing the distance between said building and the nearest building on section 18. Said distance is to be taken as the true measurement between said buildings.

"(11) The owners of the Diamond Coal Company intended that the southern street of houses on section 18 should constitute the southernmost boundary of the village of Allison. The houses on section 18 are arranged along streets running

72     SUPREME COURT OF NEW MEXICO,

State ex rel. Lorenzino v. Co. Commrs., 20 N. M. 67.

east and west, and all the buildings belonging to the Diamond Coal Company on section 18 are supplied with water by a central water plant with hydrants for domestic purposes and fire protection. The saloon building in question was not built until after the most of the houses on section 18 were completed. Said central water plant does not furnish water for fire protection or for domestic purposes to the said saloon building.

"(12) There are more than 100 inhabitants living on section 18. That Allison is an unorganized village."

The stipulated facts were adopted by the trial court as its findings, upon which it entered a judgment dismissing the alternative writ and denying the relief sought, from which judgment this appeal was taken.

## OPINION OF THE COURT.

ROBERTS, C. J.—[**1, 2**] Section 4123, C. L. 1897, provides for the steps to be taken by an applicant to secure a retail liquor license, where the license is to be used outside the limits of an incorporated town or city. Section 4124, C. L. 1897, reads as follows:

"Sec. 4124. Upon every license granted under the provisions of this act for the retail sale of malt, vinous and spirituous liquors there shall be collected before such license is issued, a tax as follows, viz.: For such license to do business in a precinct, village or town without the limits of any village, town or city having not more than five hundred inhabitants, and in such town or city having not more than five hundred inhabitants, one hundred dollars; in a precinct, village, town or city of not less than five hundred and not more than one thousand inhabitants, two hundred dollars; in a precinct, village, town or city having more than one thousand inhabitants, four hundred dollars."

In 1905, this section was amended by section 1, c. 115,

·JANUARY ·TERM,. 1915.                    73

State ex rel. Lorenzino v. Co. Commrs., 20· N. M. 67

L.: 1905,· by adding to it the` following proviso:

"Sec. 1.: ·That section 4124 of the Compiled Laws of the territory of New Mexico of 1897, is hereby .amended: by adding thereto the following :· ·'Provided, that no license shall be granted for the sale of malt, vinous or spirituous liquors at any·place in· any county of this territory, except· within the limits of ·a city, town or village containing at least one·hundred inhabitants; and any officer authorizing or issuing a license contrary to this·provision shall be deemed guilty of a·· misdemeanor and upon conviction thereof·· shall. be punished by a fine of not less than one hundred dollars nor more than five hundred dollars."

The ·controverted ·proposition in this case turns upon the ·question as to whether or not the building wherein liquor was to ·be·.sold at retail, under the license sought, was ·within 'the limits of the village of Allison.

The word "village" is defined in Bouvier's Law Dictionary to mean:

"Any small assemblage of houses for dwellings or business, or both, in the country, whether they are situated upon regularly laid out streets and alleys or not."

In a case note to the case of People v. McCune, 35 L. R.: A. 396, will be found a collection of cases from the various states, wherein the courts have defined the term, and an examination of these cases will disclose that the meaning of the word is by no means fixed and unvarying. The editor of the case note says:

"Questions as to its meaning most often arise in respect to the construction of statutes, and in such cases will, of course, depend upon the context as showing the intent of the Legislature."

Prior. to the Act of 1905, liquor licenses, for the sale of liquor· at any place, whether within or without the limits of· cities, towns, and villages, could be legally issued by boards of county commissioners.

The rule announced in Kent's Commentaries, § 462, for the interpretation of statutes, and generally followed by the courts, is as follows:

> "When the words are not explicit, the inten-
> tion is to be collected from the context, from the
> occasion and necessity of the law, from the mis-
> chief felt, and the objects and remedy in view;
> and the intention is to be taken or presumed,
> according to what is consonant to reason and
> good discretion."

In view of the statute law, under which a license could be obtained for the sale of intoxicating liquor at any place within the territory, however remote the building in which it was proposed to carry on business under the license might be from other habitations, prior to the enactment of the proviso of 1905, it was the evident intention of the Legislature to restrict the issuance of such licenses to the more populous sections of the country. It is properly inferable, we believe, that the chief object which the Legislature had in view was the restriction of the place of sale of intoxicating liquors to such buildings as were located in close proximity to other inhabited buildings, so that opportunities for the commission of crimes, the perpetration of which, as is well known and recognized, in many instances, is incited by strong drink, would be thereby lessened. Experience has demonstrated that it is unwise to permit the sale of intoxicating liquor in buildings far removed from other habitations, for here there is absolutely no restraint, and, when reason is dethroned by drink, or where unscrupulous and criminal minds so elect, the laws of society are held for naught and indescribable orgies enacted, men robbed and even murdered, with but slight fear of apprehension and subsequent punishment. The above being true, this court would not be justified in placing such a construction upon the meaning of the term "village" as would impair the legislative intent.

In this case the stipulated facts show that the building in which appellant proposed to carry on the liquor business is distant more than 1,836 feet from the nearest house in the village of Diamond; that it is located upon

a tract of land embracing 160 acres patented as a homestead; that the village of Diamond is unorganized, and consists of more than 50 buildings used for residential purposes, together with a store building and a schoolhouse; that the buildings are arranged along regular streets and are situated from 60 to 120 feet apart; that the buildings above named were all constructed by the Diamond Coal Company, on its own land, for the use of its employés; that there are no houses beyond appellant's said house for some distance, in that direction; and that the country round about the main group of buildings within the village is very sparsely settled.

Appellant argues that, because the Legislature, in 1912, provided (chapter 27, Sess. Laws 1912) "that the territory embraced in the proposed incorporated village shall not be less than one mile square nor more than three miles square, nor shall any such village be incorporated unless the same shall contain at least one hundred and fifty people," that the Legislature has construed the extent of the limits of a village, and that we should give to the term "village" used in the prior act the same construction as to boundaries; that is to say, that we should hold that an unorganized village embraces territory at least one mile square and not more than three miles square. Very little consideration, however, will dispose of this contention. Suppose we should say that it embraces a scope of country at least one mile square, what point shall we select as the center of the square? Shall it be the store, the post office, the schoolhouse, or some other arbitrary monument? It is clear that the statute referred to affords no assistance in the interpretation of the Act of 1905, here under consideration.

Appellant also quotes extensively from the case of People v. McCune, 14 Utah, 156, 46 Pac. 659, 35 L. R. A. 396, in support of his contention that his building in question was within the limits of the village of Allison. That case arose under a statute making it an offense for any person to establish and maintain any corral, camp, or bedding place for the purpose of herding, holding or keeping any cattle, horses, or sheep within seven miles of any city, town,

76    SUPREME COURT OF NEW MEXICO

State ex rel. Lorenzino v. Co. Commrs., 20 N. M. 67

or village, where the refuse or filth from said corral, camp, or bedding place would naturally find its way into any stream of water used by the inhabitants of any city, town, or village for domestic purposes. It appeared from the evidence in the case that Plateau was a settlement, con sisting of 14 families and a population of about 70 per sons, and that they resided along Otter creek for a distance of about 2½ miles, some of the residences being 40 rods from each other and some being a distance of 1 mile or more, and that their occupation was farming. The Utah court said:

"From an examination of the act, which is amended by the section above quoted, it seems clear that by the use of the word 'village' the intent of the Legislature was to include such settlements as the one in question, and there appears to be no reason why the people of such a settlement, who are using the water of a stream for domestic purposes, should not have extended to them the protection which the law affords."

From the above it will be seen that the court simply held that this settlement came within the purview of the act, because it was manifestly the intention of the Legis lature to protect the water supply of such a settlement. This case is only authority for the proposition that it is the duty of the court to ascertain the legislative intent, and give it effect, if it can be legally done.

Following the rule, we are compelled to conclude that by the use of the said term "village," in the Act of 1905, the Legislature intended to prohibit the licensing of the sale of intoxicating liquor in buildings not within the assemblage of houses used for business and residential purposes, reasonably contiguous to each other; that an isolated building more than 1,836 feet from any other building within such village is not "within the limits" of the village, within the meaning of said act.

Another reason might be advanced, were it necessary, in support of our conclusion, viz., the building owned by appellant is located, or was intended to be located, upon his patented homestead claim. The residents of the vil-

lage, as stated, are all employed by the Diamond Coal Company, and are engaged in and about the mining of coal. The village was established and founded for coal mining purposes. All its residents have a common interest, while appellant, on the other hand, resides upon his patented claim, with divergent interests. He is not a coal miner, has no interest in common with the inhabitants of the village, is engaged in a different pursuit, and has no interest in the affairs of the village, further than to secure his mail, vote therein, and possibly trade at the store. If we were to include as residents of villages all those like circumstanced in those respects, there would be absolutely no limit upon the right to issue licenses for the sale of intoxicating liquor.

For the reasons stated, the judgment of the District Court dismissing the petition will be sustained, and it is so ordered.

HANNA and PARKER, JJ., concur.

### SYLLABUS BY THE COURT.

