THE PEOPLE OF THE STATE OF NEW YORK ex rel. ATLANTIC GULF AND PACIFIC COMPANY, Relator, *v.* WILLIAM STANLEY MILLER and Others, as Commissioners of Taxes and Assessments of the City of New York, etc., Defendants.

Supreme Court, Special Term, Kings County, November 10, 1939.

*Morgan & Lockwood* [*Alfred J. L'Heureux* of counsel], for the relator.

*William C. Chanler, Corporation Counsel* [*Harry S. Lucia* of counsel], for the petitioning defendants.

LOCKWOOD, J. These certiorari proceedings to review and correct assessments made for the purpose of taxation, years 1933 to 1939 (first half), inclusive, were tried before an official referee on April 10, 11 and 14, 1939.

Thereafter, the report of the referee was confirmed and on his findings orders were made on July 6, 1939, reducing each of the assessments and providing that the defendants refund to the relator any excess of taxes paid plus interest thereon at the rate of six per centum per annum from the date of payment.

The defendants, the tax board, now move in each proceeding to resettle the orders so as to provide that interest be payable at the rate of four per cent instead of six per cent per annum on the amount of the refunds from the date of payment to the date of the repayment by the city.

The motions are based upon section 3-a of the General Municipal Law, as added by chapter 594 of the Laws of 1939, effective July 1, 1939, providing that " the rate of interest to be paid by a municipal corporation upon any judgment or accrued claim against the municipal corporation shall not exceed four per centum per annum," and upon the decision in *People ex rel. Emigrant Industrial Savings Bank* v. *Miller* (173 Misc. 538), holding that only four per cent interest is payable on the amount of tax refunds fixed by decision of June 27, 1939, but where the final order was entered after July 1, 1939.

The relator contends that interest must be paid at the rate of six per cent up to July 1, 1939, and at the rate of four per cent thereafter.

It is not disputed that in the absence of the statute above mentioned relator would be entitled to six per cent interest on the amount of the refunds from the date of payment.

The question is whether the statute is effective to deprive relator of the two per cent interest on the amount of the refunds up to July 1, 1939, the effective date of the statute.

By chapter 538 of the Laws of 1879 the Legislature reduced the lawful rate of interest from seven per cent to six per cent, effective January 1, 1880. The act contained a proviso that " nothing herein

contained shall be so construed as to in any way affect any contract or obligation made before the passage of the act."

Thereafter, in *Salter* v. *Utica & Black River R. R. Co.* (86 N. Y. 401), an action to recover damages for the death of plaintiff's intestate because of the negligence of defendant, it was held that the rate of interest on the recovery was governed by the statute in force when the damages were ascertained by verdict. The statute under which the action was brought (Laws of 1870, chap. 78) provided that the damages recovered " shall draw interest from the time of the death of such deceased person, which interest shall be added to the verdict and inserted in the entry of judgment in such action."

The court noted the distinction between that action, a tort created by the statute, and an action brought upon a liability based upon a contract express or implied, and stated that the language of the proviso excepting an obligation made before the passage of the act, was inappropriate to designate a liability for tort created by law, and not the agreement of parties express or implied (p. 403).

In *Sanders* v. *Lake Shore & Michigan Southern R. Co.* (94 N. Y. 641), an action brought to compel the declaration and payment of corporate dividends, it was held that the interest on the recovery was allowed, not by virtue of any contract to pay interest, but simply as damages because the defendant was in default in the discharge of its obligation and wrongfully withheld money due to the plaintiff. The dividends were payable prior to January 1, 1880, upon which date the legal rate of interest was changed. Interest was allowed at the rate of seven per cent from the time payment was due up to January 1, 1880, and at six per cent thereafter.

*Reese* v. *Rutherfurd* (90 N. Y. 644) was an action by stockbrokers to recover the amount of the deficit in defendant's account, for the period October 3, 1870, to December 1, 1871. The court allowed interest on the sum recovered at the rate of seven per cent up to January 1, 1880, and at the rate of six per cent thereafter, stating: " By the law as it existed prior to 1880, the rate of interest to be allowed as damages in such a case was seven per cent, and on the first day of January the plaintiffs had a vested right to so much of the interest as had accrued prior to that date, and of that vested right the law reducing the rate of interest did not attempt to deprive them, and it could not have deprived them of it even if the Legislature had attempted so to do."

*O'Brien* v. *Young* (95 N. Y. 428) involved the rate of interest payable on a judgment. It was held (two judges dissenting) that a judgment recovered prior to the change of the lawful interest rate bore interest at seven per cent to January 1, 1880, and at six per cent

thereafter. After holding that a judgment was not a contract, the court said, by EARL, J. (at p. 432):

" Suppose a statute gives a penalty to an aggrieved party, with interest, what interest could he recover? The interest allowed by law when the penalty accrued, if the statutory rate has since been altered? Clearly not. He would be entitled to the interest prescribed by law during the time of the defendant's default in payment. There would, in such a case, be no contract to pay interest, and the statutory rate of interest at the time the penalty accrued would become part of no contract. If, therefore, a subsequent law should change the rate of interest, no vested right would be interfered with, and no contract obligation would be impaired.

" The same principles apply to all implied contracts. When one makes a valid agreement to pay interest at any stipulated rate for any time, he is bound to pay it, and no legislative enactment can release him from his obligation. But in all cases where the obligation to pay interest is one merely implied by the law or is imposed by law, and there is no contract to pay except the fictitious one which the law implies, then the rate of interest must at all times be the statutory rate.

" The rate existing at the time the obligation accrued did not become part of any contract, and hence the law which created the obligation could change or alter it for the future without taking away a vested right or impairing a contract.

" In the case of all matured contracts which contain no provision for interest after they are past due, as I have before said, interest is allowed, not by virtue of the contract, but as damages for the breach thereof. In such cases what would be the effect of a statute declaring that no interest should be recovered? As to the interest which had accrued as damages before the date of the law, the law could have no effect because that had become a vested right of property which could not be taken away. But the law could have effect as to the subsequent interest, and in stopping that from running would impair no contract. A law could be passed providing that in all cases of unliquidated claims which now draw no interest, interest should thereafter be allowed as damages; and thus there is ample legislative power in such cases to regulate the future rate of interest without invading any constitutional right. When a man's obligation to pay interest is simply that which the law implies, he discharges that obligation by paying what the law exacts.

" This judgment, so far as pertains to the question we are now considering, can have no other or greater force than if a valid statute had been enacted requiring the defendant to pay the same sum with interest. Under such a statute, interest would be computed, not

at the rate in force when the statute was enacted, but according to the rate in force during the time of default in payment. A different rule would apply if a judgment or statute should require the payment of a given sum with interest at a specified rate. Then interest at the rate specified would form part of the obligation to be discharged.

"Here, then, the defendant did not in fact contract or promise to pay this judgment, or the interest thereon. The law made it his duty to pay the interest, and implied a promise that he would pay it. That duty is discharged by paying such interest as the law, during the time of default in paying the principal sum, prescribed as the legal rate."

Again, in *Wells Fargo & Co.* v. *Davis* (105 N. Y. 670) the Court of Appeals held that interest is given upon a judgment, not on the principle of implied contract, but as damages for delay in performing the obligation. The action was brought on a judgment of the Territory of Utah for a specified sum " with interest thereon at the rate of ten per cent per annum from the date " thereof, which was the lawful rate in that territory.

The majority of the court held that the plaintiff should recover seven per cent interest from the time of the entry of the Utah judgment until January 1, 1880, and at the rate of six per cent after that date.

In an action to foreclose a mortgage in the principal sum of $10,000, payable in installments of $2,500 annually, with interest at seven per cent, it was held that the principal bore interest at seven per cent from the time of execution until an installment became due, and then when the installment was paid, the interest on the balance not yet due ran at the same rate. But if an installment were not paid when due, the contract was violated, and interest upon such installment could be recovered only as damages and at the rate of interest authorized by law. Accordingly, interest was due at seven per cent upon all sums unpaid up to the time when the legal rate was reduced to six per cent, and from that time on at the latter rate. (*Ferris* v. *Hard*, 135 N. Y. 354.)

The court noted the distinction between this contract and the agreement involved in *Taylor* v. *Wing* (84 N. Y. 471), which was to pay interest on the principal sum at seven per cent, until the principal sum was paid.

The rules that may be evolved from these cases following the 1880 change of interest rate, are as follows:

(1) Interest on a judgment entered before the change of rate, runs at the old rate up to the date of change, and at the new rate thereafter.

(2) Interest allowed on a claim sounding in tort or to recover a penalty, shall be computed at the legal rate in force at the entry of judgment.

(3) Interest fixed by contract of the parties before the change, is not affected thereby.

(4) Where interest is payable as damages for breach of contract, express or implied, or because a defendant has defaulted in his obligation to the plaintiff or wrongfully withheld money due him, the interest is computed at the legal rate in effect during the period for which the computation is made, and a change of rate affects only the period subsequent to the change.

It is now appropriate to consider the nature of relator's claim for the refunds here made.

In *Matter of Hoople* (179 N. Y. 308) the court said by WERNER, J. (at p. 314): " An action for the recovery of money paid by reason of an illegal or erroneous tax is regarded as an action for money had and received to which the six years' Statute of Limitations applies. (*Brundage* v. *Village of Port Chester*, 102 N. Y. 494; *Trimmer* v. *City of Rochester*, 134 id. 76.) "

In *Matter of Furey* v. *Graves* (148 Misc. 785; affd., 241 App. Div. 897; affd., 266 N. Y. 415), denying an application for a mandamus order requiring the Tax Commission to refund transfer tax paid fifteen years theretofore, the Tax Commission contended that the six-year Statute of Limitations applied, since the cause of action was on implied or quasi contract for money had and received. Special Term, in upholding this contention, said in part as follows (at pp. 793, 794):

" So, where payment is made of a tax under an unconstitutional statute, the situation is analogous to a payment between citizens under a mutual mistake where the consideration wholly fails. To recover such a payment, an action for money had and received would lie, and a demand would be essential. (*Sharkey* v. *Mansfield*, 90 N. Y. 227). \* \* \*

" Where a valid tax is imposed but the amount is uncertain and an advance payment is made, there is no payment under a mutual mistake. The taxpayer deliberately pays an amount which will leave a margin covering contingencies and intends an overpayment. He relies upon the State to refund the excess. \* \* \*

" The contract under such circumstances would be an actual one, as distinguished from a mere quasi-contract arising out of mutual mistake.

" Such a contract would be founded on a sufficient consideration. If there was an excess payment, there was, in effect, a borrowing and a lending of the excess. The payment of the excess was a good consideration for the agreement, express or implied, to repay the same when the tax was determined. (*Eno* v. *Woodworth*, 4 N. Y. 249.)

" If, however, there was a lack of consideration and a want of mutuality, then an action for money had and received would lie on the theory of quasi-contract, upon an unjust enrichment. (*Eno* v. *Woodworth*, 4 N. Y. 249.) Thus, the parties would be in the same situation, as far as the right of action is concerned, as they would be under an unconstitutional statute as outlined above."

The latter case deals with payment of State transfer tax, in which it is customary to roughly compute the amount of tax and pay it in order to procure a discount or avoid a penalty, the excess being refunded after the tax is finally fixed. However, the principles therein expressed apply as well to an overpayment of tax on real estate.

The taxpayer's claim for refund is on the theory of money had and received, or on *quasi*-contract, and interest on the sum refunded should be at the legal rate, changing only when the statute changing the rate becomes effective.

Under both the express provisions of the statutes and upon general principles, the taxpayer should be paid the legal rate of interest in effect during the time his overpayment is held by the taxing authority. The following language in *Prager* v. *New Jersey Fidelity & Plate Glass Ins. Co.* (245 N. Y. 1, 5) is most appropriate: " While the dispute as to value was going on, the defendant had the benefit of the money, and the plaintiff was without it. Interest must be added if we are to make the plaintiff whole."

It has been held by the Supreme Court that a statute giving compensation for consequential damages caused by change of street grade creates a property right and the repeal of such statute, so as to affect rights obtained thereunder, is a deprivation of property without due process of law, as guaranteed by the 14th Amendment to the United States Constitution. (*Ettor* v. *City of Tacoma*, 228 U. S. 148.)

Likewise, under the express provisions of the existing statutes, the relator was entitled to interest at six per cent on the amount of the refunds, and the act of 1939 changing the rate, if retroactive, deprived him of that vested right. This the Legislature has no power to do. (*Reese* v. *Rutherfurd*, *supra*.)

It has been held that lawful interest on the sum awarded, from the time title is acquired, is part of the just compensation due one whose property has been taken in eminent domain. (*United States* v. *Rogers*, 255 U. S. 163.) And that such interest must be paid when the United States acquires property, despite the rule that, in the absence of a stipulation to pay interest or a statute allowing it, none can be recovered against the United States upon unpaid accounts or claims. (*Seaboard Airline R. Co.* v. *United*

*States*, 261 U. S. 299.) The right to interest does not depend upon contract, express or implied, nor upon statute, but is allowed as constituting a part of the just compensation safeguarded by the Constitution. In the latter case the court stated (at p. 306): " Interest at a proper rate is a good measure by which to ascertain the amount so to be added. The legal rate of interest, as established by the South Carolina statute, was applied in this case. This was a ' palpably fair and reasonable method of performing the indispensable condition to the exercise of the right of eminent domain, of making " just compensation " for the land as it stands, at the time of taking.' "

This court has already held that the reduced rate of interest shall apply upon awards in condemnation only from the date that the statute became effective, July 1, 1939. (*Matter of Public Parks* [*Rockaway*], N. Y. L. J. July 12, 1939, p. 92.) The same conclusion has been reached by Mr. Justice BERGAN of the Supreme Court, Ulster county, in *Matter of Gillespie* (*Delaware Section No. 8*) (173 Misc. 336) in a water supply condemnation proceeding.

The statute with which we are here concerned contains no express language indicating it is to have retroactive operation. Therefore, its effect must be deemed prospective only. (McKinney's Statutes and Statutory Construction, Book 1, §§ 17 and 18, and cases cited therein.)

Even if the language of the statute may be deemed ambiguous, every effort should be made to construe it in harmony with constitutional provisions. (McKinney's Statutes, *supra*, § 86, and cases cited.)

So far as municipalities are concerned, the act effects a repeal of the general statute (Gen. Business Law, § 370) fixing the legal interest rate at six per cent. Such repeal may not affect or impair any right accrued prior thereto. (Gen. Construction Law, § 93.)

Interest shall be paid on the refunds at the rate of six per cent up to July 1, 1939, and at the rate of four per cent thereafter.

Settle orders.