372 P.2d 808

BRADBURY & STAMM CONSTRUCTION CO., Inc.; Goodyear Aircraft Corporation, a corporation; Telecomputing Services, Inc., a corporation; General Dynamics Corporation, a corporation; Hughes Aircraft Company, a corporation; and The Ryan Aeronautical Co., a corporation, Plaintiffs-Appellants and Cross-Appellees,

v.

BUREAU OF REVENUE of the State of New Mexico; Robert Valdez, Commissioner of Revenue; Carl Folkner, Director, School Tax Division, Bureau of Revenue, Defendants-Appellees and Cross-Appellants.

No. 7105.

Supreme Court of New Mexico.

June 11, 1962.

Rodey, Dickason, Sloan, Akin & Robb, William C. Schaab, Albuquerque, for appellants and cross-appellees.

John W. Chapman, F. Harlan Flint, Sp. Asst. Attys. Gen., for appellees and cross-appellants.

NOBLE, Justice.

This appeal challenges the constitutionality of Section 1, Chapter 195, Laws of 1961, providing exemption of certain sales to the United States, the State of New Mexico and non-profit organizations from payment of the Emergency School Taxes.

Chapter 73, Laws of 1935, the Emergency School Tax Act, imposed a privilege tax (the so-called Sales Tax) upon gross sales and services, earmarked for the public

schools. The appellants, Bradbury and Stamm Construction Company, Inc., Goodyear Aircraft Corporation, Telecomputing Services, Inc., General Dynamics Corporation, Hughes Aircraft Company and The Ryan Aeronautical Company, were contractors each having contracts to perform services for the federal government or some of its agencies or departments. Each of the appellants claimed that subsection D of Chapter 195, § 1, Laws of 1961 (§ 72–16–5, N.M.S.A. 1953) was unconstitutional as creating an arbitrary, unreasonable and discriminatory classification of contractors exempt from payment of the tax; that the remaining provisions of Section 1 are not severable from subsection D and are, therefore, invalid. Each of the appellants paid, under protest, Emergency School Taxes subsequent to the effective date of the 1961 statute, and brought separate suits against the Bureau of Revenue for recovery of such taxes.

The questioned legislation is that which provides exemptions from the so-called sales tax to the government of the United States, its agencies and departments; the state and its political subdivisions; and to certain charitable organizations. The attempt to tax sales of property and services to the United States has had a long and stormy history as shown by the many amendments to the sales tax law providing exemptions to the United States and New Mexico. The Emergency School Tax Law, enacted in 1935, originally exempted from the tax sales made to the United States; the state and its political subdivisions; and, to any business or transaction exempted from taxation by the Constitutions of the United States or New Mexico. Amendments to this section (§ 72–16–5, N.M.S.A. 1953) were enacted in 1941 and 1947 which are not pertinent to the issue now presented. Exemptions from sales to the United States and its agencies were completely removed by Chapter 187, Laws 1957, but the exemptions to the state and its political subdivisions were retained. In 1959, sales of tangible personal property to the United States and sales of tangible personal property and services to the state were exempted from the tax.

Chapter 195, Section 1, Laws of 1961 (§ 72–16–5, N.M.S.A. 1953) was enacted by the legislature providing certain exemptions from payment of the tax. The statute became effective March 31, 1961, and reads:

"72–16–5. Exemption of sales to United States, state agencies, societies, hospitals, fraternal and religious organizations not for profit.—None of the taxes levied by the Emergency School Tax Act, as amended * * *, shall be construed to apply to:

"A. Sales of tangible personal property, other than metaliferous [sic] mineral ores, whether refined or unre-

fined, made to the government of the United States, its departments or agencies;

"B. Sales of tangible personal property, other than metaliferous [sic] mineral ores, whether refined or unrefined, made to the state of New Mexico or any of its political subdivisions;

"C. Sales of tangible personal property, other than metaliferous [sic] mineral ores, whether refined or unrefined, made to non-profit hospitals, religious or charitable organizations in the conduct of their regular hospital, religious or charitable functions.

"D. The gross receipts from any lump sum or unit price contract for a particular project entered into prior to the effective date of this act, if the contract would not by its terms allow the contractor to increase his price to cover any additional privilege tax which were to be levied against him."

No dispute exists as to the facts. None of the taxes involved here were paid by reason of the sale of any tangible personal property directly to the United States or any of its agencies or departments. The protested taxes involved arose out of contracts by appellants with agencies of the United States for services. The protested payments, with the exception of Bradbury & Stamm Construction Co., Inc., were all made after the effective date of the 1961 law. Separate judgments were entered, each holding that subsection D of the 1961 act violates the equal protection provision of the Fourteenth Amendment to the Constitution of the United States and of Article II, Section 18 of the Constitution of New Mexico, and declaring the remaining portion of the statute severable and valid. The result was that recovery of the protested taxes was denied in the judgments in the cases of all the appellants except Bradbury and Stamm. Bradbury & Stamm was allowed recovery for those taxes paid under protest by it before enactment of the 1961 statute. Each of the judgments were appealed, and by stipulation and order of court were consolidated for purpose of appeal to this court. The appeal presents no issue as to the correctness of the ruling of the trial court in declaring subsection D invalid, and we express no opinion respecting such ruling.

The questions presented by the appeal are (1) assuming subsection D to be invalid, are the remaining portions of section 1, Chapter 195, Laws 1961, severable and enforceable? And, (2) does the imposition of the tax upon one rendering services to the United States constitute a prohibited tax to the United States?

It is well established in this jurisdiction that a part of a law may be invalid and the remainder valid, where the invalid part may be separated from the

other portions, without impairing the force and effect of the remaining parts, and if the legislative purpose as expressed in the valid portion can be given force and effect, without the invalid part, and, when considering the entire act it cannot be said that the legislature would not have passed the remaining part if it had known that the objectionable part was invalid. State v. Brooken, 19 N.M. 404, 143 P. 479, L.R.A. 1915B, 213, Ann.Cas.1916D, 136; Schwartz v. Town of Gallup, 22 N.M. 521, 165 P. 345; State v. Walker, 34 N.M. 405, 281 P. 481; In re Santillanes, 47 N.M. 140, 138 P.2d 503; State v. Klantchnek, 59 N. M. 284, 283 P.2d 619.

■ Chapter 195, Laws 1961, does not contain a severability clause, and appellants strongly urge that its absence creates a presumption that the legislature intended the entire section to fail if any of its provisions be invalid. In approaching the question of the constitutionality of a statute, we do so bearing in mind that every presumption is to be indulged in favor of the validity and regularity of the legislative act. State v. Armstrong, 31 N.M. 220, 243 P. 333; State v. Thompson, 57 N.M. 459, 260 P.2d 370; State v. Mechem, 63 N.M. 250, 316 P.2d 1069; Dickson v. Saiz, 62 N.M. 227, 308 P.2d 205.

■ The fact that the 1959 amendment to § 72–16–5 contained a severability clause while the 1961 amendment did not is urged by appellants as a strong reason for presuming that the legislature did not intend the 1961 statute to be separable. While the fact that in previous enactments providing exemptions to the federal government and state the severability clause was enacted and was omitted from the last enactment, may be considered along with other rules as an aid in determining the legislative intent, it is nevertheless only an aid and is not compelling. The presence or absence of a severability clause merely provides one rule of construction which may be considered and may sometimes aid in determining legislative intent, "but it is an aid merely; not an inexorable command." Dorchy v. Kansas, 264 U.S. 286, 290, 44 S.Ct. 323, 325, 68 L.Ed. 686, 689; Hill v. Wallace, 259 U.S. 44, 71, 42 S.Ct. 453, 459, 66 L.Ed. 822, 831; Safeway Stores, Inc. v. Vigil, 40 N.M. 190, 57 P.2d 287.

■ This court is committed to the proposition that all rules of statutory construction are but aids in arriving at the true legislative intent. In re Vigil's Estate, 38 N.M. 383, 34 P.2d 667, 93 A.L.R. 1506; A. T. & S. F. Ry. Co. v. Town of Silver City, 40 N.M. 305, 59 P.2d 351, "* * * and should never be used to override same where it otherwise plainly appears * *." Janney v. Fullroe, 47 N.M. 423, 144 P.2d 145.

Appellants assert that Safeway Stores, Inc. v. Vigil, supra, is controlling and com-

pels a determination that subsection D is not separable from the remainder of the section. We do not so construe that decision. In Safeway, the statute required retail dealers to obtain a permit to engage in business and imposed a tax measured by the annual gross sales. In substance, retail dealers were defined to be those dealing in merchandise by selling to the ultimate consumer for use and not resale, "and who sells in small parcels, packages, bales, boxes or other containers * * *." Laws 1934, Sp.Sess., c. 33, § 1.

The "and who sells" clause was held to create an improper classification of retailers and to make the definition of retail dealers invalid. Because the act contained a severability clause, it was argued that the invalid "and who sells" clause could be eliminated from the definition and the remainder held valid. This court held the invalid portion not separable from the remainder of the definition because to eliminate the invalid part would define retail dealers to be something entirely different from the manifest legislative intent. In Safeway, it was said that to delete the "and who sells" clause would clearly result in a definition of retail dealers which the legislature had carefully avoided. Safeway is distinguishable upon its facts. Subsection D of the 1961 Act is not so interrelated nor is it and the remaining portions so dependent upon each other that

the remainder cannot stand if subsection D be invalid; it may be separated from the other portions without impairing the force and effect of the remainder.

■ It is often helpful and important in construing legislative intent to look at the history and historical background of the legislation, that is, to view prior statutes on the same or similar subject matter. Munroe v. Wall, 66 N.M. 15, 340 P.2d 1069; State v. Prince, 52 N.M. 15, 189 P.2d 993; James v. County Commissioners, 24 N.M. 509, 174 P. 1001; State ex rel. Lorenzino v. County Commissioners, 20 N.M. 67, 145 P. 1083, L.R.A.1915C, 898; Sutherland, Statutory Construction (3rd Ed.) Vol. 2, § 5002.

Chapter 78, Laws 1959, exempted from the sales tax:

"A. sales of tangible personal property, * * * made to the government of the United States, its departments or agencies;

"B. sales of tangible personal property *or services* made to the state of New Mexico or any of its political subdivisions." (Emphasis supplied.)

Because of the exemption of the tax on services to the state, district courts in cases not appealed have held the 1959 statute discriminatory and invalid. The 1957 amendment was likewise held unconstitutional by district courts. It appears clear

to us that the 1961 Legislature, having these decisions in mind, sought to remove the objectionable features resulting from the discrimination between the exemptions to the United States and the state. A comparison of the 1959 and 1961 amendment to § 72–16–5 discloses that subsection A is identical in both acts, and that the only change in the language of subsection B in 1961 was the omission of the words "or services" and the addition of the words "other than metalliferous mineral ores, whether refined or unrefined, made to the state of New Mexico or any of its political subdivisions." Thus, the 1961 act made the exemptions to the United States and the state identical, and removed the language held to make the 1959 amendment unconstitutional.

An analogous situation was present in Huntington v. Worthen, 120 U.S. 97, 7 S. Ct. 469, 30 L.Ed. 588, where a portion of the statute which exempted certain items of railroad property from assessment and valuation were exempted from taxation was held invalid. It was contended there, as here, that the invalid portion was not separable from the remainder, and that the whole must be declared invalid. The Supreme Court of the United States said:

"The unconstitutional part of the statute was separable from the remainder. The statute delared that, in making its statement of the value of its property, the railroad company should omit certain items; that clause being held invalid, the rest remained unaffected, and could be fully carried out. An exemption, which was invalid, was alone taken from it. It is only when different clauses of an act are so dependent upon each other that it is evident the legislature would not have enacted one of them without the other—as when the two things provided are necessary parts of one system —that the whole act will fall with the invalidity of one clause. When there is no such connection and dependency, the act will stand, though different parts of it are rejected."

See, also, Stillman v. Lynch, 56 Utah 540, 192 P. 272, 12 A.L.R. 552; Northwestern Mutual Life Insurance Co. v. Lewis, 28 Mont. 484, 72 P. 982.

In Fairley v. City of Duluth, 150 Minn. 374, 185 N.W. 390, 32 A.L.R. 1258, a wheelage tax was imposed upon motor vehicles and section 3 provided certain exemptions. The trial court, there, as here, held the exemption invalid and the remainder valid. No appeal was taken from that portion of the judgment declaring the exemption invalid. It was contended that the invalid portion was not separable, but the court said:

"The exemption is not so important nor is it so connected in subject or

purpose with the other portions of the statute that the Legislature would not have passed the statute if subdivision 3 must be omitted. If subdivision 3 falls, and we are not concerned with its future now, chapter 454 is still a working and constitutional law."

When we consider the prior amendments to § 72–16–5, N.M.S.A.1953 and the end sought to be attained, it is evident to us that beginning with 1957 each legislature sought to remove all exemptions it constitutionally could from sales or services to the United States, and at the same time extend such exemptions so far as possible to the state and its political subdivisions. Its purpose to enact a constitutional exemption provision appears manifest to us. Each legislature sought to remove those features which had been held objectionable. Differing from the situation in Safeway, the deletion of subsection D in no way affects the enforceability of the other portions of the statute. They are clear, certain and unambiguous, and we cannot say that the exemptions provided by subsection D are so connected either in subject or purpose with the other portions of section 1, Chap. 195, Laws 1961, that the legislature would not have enacted the remainder of the section if it had known subsection D was invalid. Upon authority of Clovis National Bank v. Callaway, 69 N.M. 119, 364 P.2d 748; City of Roswell v. City of Holmes, 44 N.M. 1, 96 P.2d 701; State

v. Brooken, supra; Schwartz v. Town of Gallup, supra; State v. Walker, supra; In re Santillanes, supra, and State v. Klantchnek, supra, we hold that subsection D, assuming its invalidity, is separable from the remainder of Section 1, and that the remainder of Section 1, Ch. 195, Laws 1961 (§ 72–16–5, N.M.S.A.1953) is constitutional and enforceable.

Finally, appellants contend that § 72–16–5, N.M.S.A.1953, is unconstitutional in its entirety because it seeks to impose a tax on sales to the United States. An examination of the language of the statute clearly discloses that it expressly exempts from the Emergency School Tax Law taxes upon "sales of tangible personal property" to the United States, its departments and agencies, and that the tax imposed is one measured "by the amount or volume of business done * * *" and not by purchases or sales.

The act does leave services performed by contractors as taxable. We assume it is the tax upon these services that appellants refer to as a tax on "sales" to the United States. Appellants rely upon Panhandle Oil Company v. Mississippi, 277 U.S. 218, 48 S.Ct. 451, 72 L.Ed. 857, and Kern Limerick, Inc. v. Scurlock, 347 U.S. 110, 74 S.Ct. 403, 408, 98 L.Ed. 546, in support of their position. There, it is true the court determined that a state tax upon gasoline levied against a distributor could

not be enforced as to sales of gasoline made to an agency of the United States, upon the theory that it amounted to the levy of a tax against the United States. Later decisions of the Supreme Court of the United States have so limited Panhandle Oil Company that it is wholly inapplicable to the situation in the instant case. Nor is Kern-Limerick, Inc. v. Scurlock, supra, either applicable or controlling. There, the contract was so worded that the United States was the direct purchaser of the supplies.

James. v. Dravo Contracting Company, 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155, is based upon facts almost identical to those in the instant case and distinguished and limited Panhandle Oil in its application. There, West Virginia levied a privilege tax on account of "business and other activities" and by one of its provisions imposed a tax upon persons engaged in contracting. The tax was two per cent of the gross income of the business. The question was whether the tax was invalid as laying a burden upon the operations of the federal government. The court there extensively reviewed the many decisions of that court upon the question, including the Panhandle Oil Company decision. It was pointed out that the imposition of such a tax upon a contractor doing business with the United States would ordinarily be reflected in the price ultimately paid for such services by the United States.

That, of course, is appellants' position here. In respect thereto the court in James v. Dravo Contracting Company, supra, said:

"But if it be assumed that the gross receipts tax may increase the cost to the government, that fact would not invalidate the tax. With respect to that effect, a tax on the contractor's gross receipts would not differ from a tax on the contractor's property and equipment necessarily used in the performance of the contract. Concededly, such a tax may validly be laid. Property taxes are naturally, as in this case, reckoned as a part of the expense of doing the work. Taxes may validly be laid not only on the contractor's machinery but on the fuel used to operate it. * * *"

The opinion concluded:

"We hold that the West Virginia tax so far as it is laid upon the gross receipts of respondent derived from its activities within the borders of the state does not interfere in any substantial way with the performance of federal functions, and is a valid exaction. * * *"

In Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, Alabama imposed a sales tax on gross retail sales of tangible personal property. The Supreme Court of that state construed the statute as requiring the seller "to add to the sales

price and collect from the purchaser the amount due by the taxpayer on account of said tax." King & Boozer furnished lumber on order of contractors constructing an army installation upon a cost-plus contract. It was contended that the tax was one imposed upon the United States and, therefore, invalid. Under its contract, the lumber was ordered delivered upon approval of the procuring officer of the governmental department. It was held not to be a sale directly to the United States and not subject to constitutional objection. The court concluded by saying:

> "The added circumstance that they [contractors] were bound by their contract to furnish the purchased material to the Government and entitled to be reimbursed by it for the cost, including, the tax, no more results in an infringement of the Government immunity than did the tax laid upon the contractor's gross receipts from the Government in James v. Dravo Contracting Co., [302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318,] supra."

See, also, Metcalf & Eddy v. Mitchell, 269 U.S. 514 at 523, 524, 46 S.Ct. 172, 70 L.Ed. 384; Trinityfarm Constr. Co. v. Grosjean, 291 U.S. 466 at 472, 54 S.Ct. 469, 78 L.Ed. 918; Helvering v. Gerhardt, 304 U.S. 405 at 416, 58 S.Ct. 969, 82 L.Ed. 1427; Graves v. New York, 306 U.S. 466 at 483, 59 S.Ct. 595, 83 L.Ed. 927, 120 A.

L.R. 1466; E. I. DuPont De Nemours & Co. v. State, 44 Wash.2d 339, 267 P.2d 667.

James v. Dravo Contracting Co., supra, distinguished Panhandle Oil Co. upon the ground that there the sale was made directly to the United States and that decision must be limited to facts in which the sale is so directly made. The Panhandle Oil Company decision was referred to by the court in Alabama v. King & Boozer, supra, in the following language:

> "So far as a different view has prevailed, see Panhandle Oil Co. v. Mississippi, and Graves v. Texas Co. supra [298 U.S. 393, 56 S.Ct. 818, 80 L.Ed. 1236], we think it no longer tenable."

■ We find no merit to appellants' contention that the statute in question has the effect of levying an unconstitutional tax upon the United States, its agencies or departments.

Bradbury & Stamm Construction Co., Inc. paid taxes under protest and brought suit for refund prior to March 31, 1961. Judgment was entered after that date ordering a refund of such taxes with interest thereon at the rate of six per cent per annum from the respective dates of payment under protest to the date of the judgment. The state cross-appealed from the allowance of interest, contending interest should be limited to two per cent.

Laws of 1959, chapter 350, § 1, effective both when the protested tax payments were made and when the suit for their refund was filed, so far as material here provides:

"* * * but after payment of any such tax, penalty or interest under protest, * * * the taxpayer may bring action against the bureau of revenue * * * for the recovery of any tax, interest or penalty so paid under protest. * * *

"* * * In any such judgment, interest shall be allowed at the rate of six per-cent per year upon the amount found to have been illegally collected. Such judgment and interest shall be paid out of the suspense fund hereinafter provided."

The interest rate was amended by chapter 195, § 2, Laws 1961, N.M.S.A.1953, § 72–16–28, effective March 31, 1961 to require interest on the amount found to have been illegally collected at the rate of two per cent per annum. The state contends that the 1961 statute controls the amount of interest to be allowed on judgments entered after its effective date. It contends that the state is not required to pay interest on taxes illegally collected; that a statute authorizing interest is merely an act of legislative grace; that the Legislature, in the public interest, may relieve the state of interest payments entirely or reduce the rate; and that the 1961 act is retroactive. Cross-appellee, on the con-

trary, asserts that the 1959 act granted the taxpayer a right to have illegally collected taxes refunded together with interest at the rate then provided by the statute, and that as to such taxes for which action for refund was pending at the time of the amendatory act, the 1961 statute cannot apply without offending Article IV, section 34 of the Constitution; that the 1961 act has a prospective effect only; and, that if it is applicable it relates only to interest allocated to the period after March 31, 1961.

Cross-appellee argues that the statute in force when the protested payments were made and which allowed interest "upon the amount found to be illegally collected" creates an implied contract between the state and the protesting taxpayer, and relies upon People ex rel. Atlantic, Gulf & Pacific Co. v. Miller, 173 Misc. 397, 17 N. Y.S.2d 202, a New York trial court opinion, in support of this contention. However, the New York Court of Appeals in the later case of People ex rel. Emigrant Industrial Sav. Bank v. Sexton, 284 N.Y. 57, 29 N.E.2d 469, reached a different result in a case involving a legislative change in interest on protested tax payments, and said:

"We are here dealing with a case where there has been no express contract for the payment of interest. Petitioner's right to a refund with interest is statutory only. Interest is given

as damages for delay in payment of the principal obligation."

Interest generally is of two kinds—it "is compensation allowed by law or fixed by the parties for the detention of money, or allowed by law as additional damages for loss of use of the money due as damages, during the lapse of time since the accrual of the claim." McCormick on Damages, § 50, p. 205.

The cases cited by cross-appellee in support of its contention that interest is always allowable on a claim, the amount of which is ascertainable, are all distinguishable. They all involve claims between individuals. It is the general rule that in the absence of statute, interest is not chargeable against the government because of a delay or default. Engebretson v. City of San Diego, 185 Cal. 475, 479, 197 P. 651; Reclamation District No. 1500 v. Reclamation Board, 197 Cal. 482, 503, 241 P. 552. See United States v. Sherman, 98 U.S. 565, 568, 25 L.Ed. 235. And there is no implied contract of any kind that the state will pay interest on its indebtedness. The state is liable for interest only when made so by statute. Gregory v. State, 32 Cal.2d 700, 197 P.2d 728, 4 A.L.R.2d 924. The requirement that the state pay interest on protested taxes judicially determined to have been illegally collected is therefore only a statutory liability and is in the nature of a penalty.

The question is then presented whether such statutory requirement gives to the protesting taxpayer a right or remedy within the meaning of Article IV, Sec. 34 of the Constitution, which reads:

"No act of the legislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case."

We think such a statutory requirement to pay interest requires only the payment of interest prescribed by law during the delay in payment by the state. There is no contract, express or implied, to pay interest. The requirement that the state pay interest creates no right in the taxpayer, but only a privilege subject to being changed. John E. Ballenger Const. Co. v. State Board, 234 Ala. 377, 175 So. 387; Turner et al. v. Lumbermen's Mut. Ins. Co., 235 Ala. 632, 180 So. 300.

In State ex rel. Sparling v. Hitsman, 99 Mont. 521, 44 P.2d 747, 748, 750, the statute imposed penalties and interest on delinquent taxes. After such delinquency, legislation was enacted providing that a delinquent taxpayer whose property had been sold for delinquent taxes "shall be permitted to redeem the same by paying the original tax due thereon, and without the payment of any penalty or interest thereon." Laws 1935, c. 88, § 1. Constitutionality of the act was questioned as violative of a provision that:

"No obligation or liability of any person * * * held or owned by the state * * * shall ever be * * remitted, released * * * or in any way diminished by the legislative assembly; nor shall such liability or obligation be extinguished, except by the payment thereof into the proper treasury." Const. art. 5, § 39.

That court was called upon to decide whether statutory interest and penalties imposed on a delinquent taxpayer constituted an obligation or liability due the state which could not be released without payment thereof. Interest on delinquent taxes was held to be in effect a penalty. See, also, Livesay v. De Armond, 131 Or. 563, 569, 284 P. 166, 168, 68 A.L.R. 422; State ex rel. First Thought Gold Mines v. Superior Court for Stevens County, 93 Wash. 433, 161 P. 77; Biles v. Robey, 43 Ariz. 276, 30 P.2d 841; State ex rel. Crutcher v. Koeln, 332 Mo. 1229, 61 S.W.2d 750; Henry v. McKay, 164 Wash. 526, 3 P.2d 145, 77 A.L.R. 1025; 3 Cooley on Taxation, § 1274.

The Montana decision went on to say:

"We, therefore, hold that the penalties, which include interest, are no part of the tax, and therefore are not a part of the obligation; and that the remission, reduction, or postponement of such penalties does not impinge upon the provisions of section 39 of article 5 of the Montana Constitution."

Other courts holding statutory interest to be a penalty and not an obligation include, Farr v. Nordman, 346 Mich. 266, 78 N.W.2d 186; State ex rel. Hardy v. The State Board of Equalization, 133 Mont. 43, 319 P.2d 1061; Jones v. Williams, 121 Tex. 94, 45 S.W.2d 130, 79 A.L.R. 983; Grieb v. National Bank of Kentucky's Receiver, 252 Ky. 753, 68 S.W.2d 21.

Certainly if a statutory imposition of interest and penalties upon a delinquent taxpayer creates no obligation from the taxpayer to the state within the meaning of the Constitution prohibiting remission of any obligation or liability held or owned by the state, a statutory requirement that the state pay interest on refunds of taxes judicially determined to have been illegally collected, cannot be said to create an obligation of the state to the taxpayer which gives rise to a vested right in the taxpayer within the meaning of the constitutional provision. It is a statutory requirement only which may be changed without violating the provisions of Article IV, section 34 of the New Mexico Constitution. O'Brien v. Young, 95 N.Y. 428, 432. Furthermore, we do not believe this provision of the Constitution is applicable to the instant case in view of our decisions. See Hildebrand's Estate, 57 N.M. 778, 264 P.2d 674 and cases cited therein.

Finally, cross-appellee concedes that the Legislature may change the interest rate if

it be held it has not a vested right to receive the interest provided by statute at the time of payment under protest, and urges that in such event the 1961 statute be construed to operate prospectively only from its effective date. That position, we think, is supported by the weight of authority.

It has long been the rule in this jurisdiction that statutes are presumed to operate prospectively only and will not be given a retroactive effect unless such intention on the part of the Legislature is clearly apparent. Gallegos v. A. T. & S. F. Ry. Co., 28 N.M. 472, 214 P. 579; Wilson v. New Mexico Lumber & Timber Co., 42 N.M. 438, 81 P.2d 61; Board of Education of City of Las Vegas v. Boarman, 52 N.M. 382, 199 P.2d 998; Davis v. Meadors-Cherry Co., 65 N.M. 21, 331 P.2d 523.

The general rule applicable to statutory interest on tax refunds imposed upon the government where there has been a change of rate was applied in Gregory v. State, supra, and People v. Sexton, supra, and is stated thus in McCormick on Damages, § 52, p. 211:

"If the statutory rate is changed after the cause of action accrues, the interest should be allowed at the old rate before, and at the new rate after, the altering enactment takes effect."

Following the above rule and applying the interest provided by § 2, chapter 195, Laws of 1961, only after its effective date would not be giving the 1961 statute a retroactive effect, Gregory v. State, supra. We find nothing in the language of the act indicating a legislative intent that it have retroactive effect. Construing the 1961 statute as prospective only, as we do, cross-appellee, Bradbury & Stamm Construction Co., Inc. is entitled to receive interest on the refunds found to be due it by the judgment from the respective dates of such protested payments to March 31, 1961 at the rate of six per cent per annum and thereafter at the rate of two per cent per annum.

The judgments appealed from are affirmed except that the judgment directing a refund to cross-appellee, Bradbury & Stamm Construction Co., Inc., is remanded with instructions to vacate the judgment and to re-enter it allowing interest in accordance with the views expressed herein.

IT IS SO ORDERED.

COMPTON, C. J., and CHAVEZ, J., concur.

CARMODY and MOISE, JJ., dissenting in part.

MOISE, Justice (dissenting in part).

I concur with the opinion of the majority except insofar as it holds that cross-appellee, Bradbury & Stamm Construc-

tion Co., Inc., is entitled to interest at the reduced rate provided by Chap. 195, N.M. S.L.1961, from and after the effective date of that act.

The disposition of the interest problem disregards totally the provisions of Art. IV, Sec. 34, of our Constitution, and follows decisions from jurisdictions which are in no sense restricted by a constitutional provision such as ours. Absent such a provision, I would agree that the result reached is supported by respectable authority. However, I can not reconcile the conclusion of the majority with what seems to me to be the plain language of Art. IV, Sec. 34. It reads as follows:

"No act of the legislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case."

That the case was pending when Chap. 195, N.M.S.L.1961, became effective can not be questioned. The issue, then, is, was the "right or remedy" of Bradbury & Stamm "affected" when the interest rate was reduced from 6% to 2%? The majority concludes that it was not because ordinarily a litigant is not entitled to interest against the government by virtue of its delay or default and a statute providing for interest creates no contract to pay interest, nor does it create any vested right in the taxpayer.

I agree that if we had no statute providing for the payment of interest, none would be due. I also agree that there is no contract to pay interest. However, to say that no vested right to interest was created in the taxpayer under the facts here being discussed is to beg the question.

It seems to me that when Bradbury & Stamm filed suit to recover the taxes paid under protest while the law provided for 6% interest, to say that no vested right resulted, is to totally disregard the constitutional proscription against changing the "right" of a litigant in a pending case. Possibly the right was not a vested one in the sense that the term is ordinarily used. However, that Bradbury & Stamm were entitled to 6% interest when they filed their suit is clear. The nature of the entitlement can not be altered by saying it was not a "vested right." The constitutional provision quoted above prohibits any change of a right by legislative act after suit had been commenced. The "rights" of the parties became fixed with the filing of the suit and it is of no consequences that so long as no suit was filed the State could grant, alter or take away the right to collect interest. Once the State became a party to a suit the constitutional provision applies with equal force to it as it does to any other party.

I see nothing in In re Hildebrand's Estate, 57 N.M. 778, 264 P.2d 674, and the

242

cases cited therein, which in any way detracts from the views expressed herein.

Oklahoma has a provision in its constitution which provides: " * * * After suit has been commenced on any cause of action, the Legislature shall have no power to take away such cause of action, or destroy any existing defense to such suit." Art. 5, Sec. 52, Okla.Const. The term "right or remedy" appearing in Art. IV, Sec. 34, of our Constitution, has the same general meaning and import as "cause of action" and "defense," the terms used in the Oklahoma Constitution. In the case of Dowler v. State, 179 Okl. 532, 66 P.2d 1081, it was held that after suit was filed by a taxpayer, pursuant to statutory authority, to recover double the amount of money wrongfully expended by public officials from public funds, the legislature had no power to take away the cause of action. A contention that the provision of the constitution did not include suits brought under a penalty statute was specifically overruled.

It was pointed out in the Oklahoma decision that the cases relied on as authority for a contrary rule are either cases where no suit had been instituted before the law was changed, or from states having no provision in their constitutions such as their Art. 5, Sec. 52. The same is equally true here under our Art. IV, Sec. 34.

The case of State ex rel. Sparling v. Hitsman, 99 Mont. 521, 44 P.2d 747, is, to my mind, no support whatsover for the position of the majority. I see no similarity between the situation here present and a holding that penalty and interest provided to be paid by taxpayers on delinquent taxes are in the nature of a penalty and can be forgiven by the state as not being an "obligation or liability" due the state, and which the constitution provided could not be remitted or extinguished. The obligation here is from the state to the taxpayer—not the reverse, and we are not discussing whether there can be forgiveness of obligations, but rather whether rights present when a suit was filed can be changed by the legislature while the case is pending.

I would also make mention of the fact that I do not think any discussion of whether legislation should be given retroactive or prospective application is called for. The only problem to be resolved so far as this case is concerned is whether or not the 2% interest rate provided for in Chap. 195, N.M.S.L.1961, can be applied to a recovery by Bradbury & Stamm in a suit which had been filed before the act became effective. I think the answer must be in the negative. Since the majority has decided otherwise on this aspect of the case, I dissent. I would affirm the case without remand.

CARMODY, J., concurs.